# LOWRY HILL PROPERTIES, INC. v. ASHBACH CONSTRUCTION COMPANY AND ANOTHER.

194 N. W. (2d) 767.

November 26, 1971—No. 43040.

*Haverstock, Gray, Plant, Mooty & Anderson* and *Charles K. Dayton,* for appellant.

*Meagher, Geer, Markham & Anderson, Clyde F. Anderson, James W. Torke, O. C. Adamson II,* and *Moore, Costello & Hart,* for respondent Ashbach Construction Company.

*King, Rieke, Lommen & Cole,* for respondent K. B. V., Inc.

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Deputy Attorney General, and *John R. Murphy,* Special Assistant Attorney General, for State of Minnesota, amicus curiae.

*Moore, Costello & Hart* and *B. Warren Hart,* for Associated General Contractors of Minnesota, amicus curiae.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Hachey, JJ.

RONALD E. HACHEY, JUSTICE.*

Plaintiff, Lowry Hill Properties, Inc., appeals from summary judgment for defendants. The action arises from construction activities involved in the creation of an interstate highway interchange in the vicinity of Hennepin, Lyndale, Summit, and Douglas Avenues in Minneapolis, Minnesota. Plaintiff, the owner of several apartment buildings adjacent to the construction area, brought an action against defendant Ashbach Construction Company, the contractor, and defendant Kimmes-Bartelma Construction Co., Inc., an alleged subcontractor, to recover damages to said buildings allegedly resulting from defendants' construction activities carried out pursuant to a contract with the State of Minnesota. The action was originally brought on four grounds: (1) Strict liability, (2) negligence, (3) trespass, and (4) nuisance. The trial court granted Ashbach leave to amend its answer to include the defense of sovereign immunity, and plaintiff was allowed to amend its complaint, adding a fifth cause of action asserting its right to recover as a third-party beneficiary of the contract between Ashbach and the State of Minnesota.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

Defendant Kimmes-Bartelma was dismissed from the action and defendant K. B. V., Inc., substituted in its place.

When the case was called for trial, discussion between court and counsel resulted in a determination that since a possible sovereign immunity defense might make a trial unnecessary, plaintiff would make an offer of proof setting out all possible theories of liability. After a lengthy offer of proof, the trial court granted summary judgment in favor of defendants.

On October 8, 1964, Ashbach entered into a contract with the state, which provided, among other things, for the construction of highway bridges. Pursuant to this contract the pile driving for the bridges was done by Ashbach, and the preliminary work on the roadbed was done by K. B. V. The contract incorporated by reference a proposal containing specifications for the project as well as Minnesota Department of Highways, Standard Specifications for Highway Construction dated January 1, 1964. Three pertinent provisions of the Standard Specifications provide as follows:

"1710 PROTECTION AND RESTORATION OF PROPERTY

\* \* \* \* \*

"The Contractor shall notify, in writing, the owners of all corporate or private property which will be interfered with by his operations, advising them of the nature of the interference, and arranging with them for the protection of such property. He shall furnish the Engineer, upon request, with copies of all such notifications and final agreements.

\* \* \* \* \*

"The Contractor shall assume full responsibility for any damage, occasioned by or resulting from his operations, work or materials, to property of any kind located within and outside the Right of Way, whether above or below the ground surface, except that he will not be held responsible for damage to property located below the ground surface, within the Right of Way, when the existence of such property is not shown in the Plans, indi-

cated in the Special Provisions or otherwise brought to his attention before the damage is done.

"If the existence of any such property damaged or destroyed by the Contractor's operations, work or materials was known to him before the damage was done, the Contractor shall, at his own expense, restore such property to a condition similar or equal to that existing before such damage or injury was done, by repairing, rebuilding or replacing it as may be directed, or he shall otherwise make good such damage or destruction in an acceptable manner."

"1711  RESPONSIBILITY FOR DAMAGE CLAIMS

"The Contractor shall indemnify and save harmless the State, its officers and employees from all suits, actions, or claims of any character brought because of any injuries or damages received or sustained by any person, persons or property, on account of the operations of the said Contractor, or on account of or in consequence of his neglect in safeguarding the work; or through his use of unacceptable materials in constructing the work; or because of any act or omission, neglect or misconduct of said Contractor; or because of any claim or liability arising from or based on any violation of any law or regulation made in accordance with law, whether by the Contractor or any of his agents or employees; or because of any claims or amounts recovered for any infringement of patent, trademark or copyright; or from any claims arising out of or amounts recovered under any law, ordinance, or regulation made in accordance with any law or ordinance; and so much of the money due the Contractor under and by virtue of his Contract as may be considered necessary by the State for such purposes will be retained for the use of the State; or in case no money is due, his Surety shall be held liable until such suit or suits, action or actions, claim or claims for injuries or damages as aforesaid shall have been settled and suitable evidence to that effect has been furnished the State."

"1714 PERSONAL LIABILITY OF PUBLIC OFFICIALS

"In carrying out any of the provisions of the Contract or in exercising any power or authority granted to him thereby, there shall be no personal liability upon the Commissioner or his authorized representatives, it being understood that in such matter he and they act as agents and representatives of the State."

Plaintiff offered to prove that Ashbach had detailed knowledge of the soil conditions of the area; that pile driving in the area was likely to cause damage to buildings in close proximity; and that Ashbach negligently drove the piles by using more blows of the piledriver hammer than necessary, thus causing the piles to be driven deeper and with more resistance, which, in turn, resulted in excessive vibrations. Plaintiff further alleged, and maintained its proof would show, that defendants were made aware that their operations were causing damage to plaintiff's properties and that alternative methods of construction were available to defendants. Other evidence of negligence would show that Ashbach misplaced eight piles, requiring eight additional piles to be driven, thereby adding to the excessive vibrations.

Plaintiff offered to show that K. B. V. removed the cobblestone surface of Hennepin and Lyndale Avenues and also the old streetcar tracks by ramming a dozer blade into the pavement with tremendous force. This resulted in vibration to plaintiff's buildings to the extent that tenants made complaints. Plaintiff further offered to prove that the work was done negligently in that no precaution was used such as attempting to loosen the pavement before removal, which allegedly could have prevented much of the damage to the buildings.

Based on the offer of proof, and after hearing arguments of counsel, the trial court found that neither defendant was negligent and concluded that neither defendant was liable to plaintiff. It suggested that plaintiff has a more proper remedy in a condemnation proceeding.

In a memorandum made a part of its order, the court was concerned primarily with two basic areas of a contractor's liability. The first relates to the extent of the contractor's liability when he has carefully carried out the plans, specifications, and directives given him—that is, whether or not the state's sovereign immunity may be extended to the contractor under such circumstances. The second area relates to the liability of the contractor to third persons occasioned by the provision of the contract in which the contractor agrees to be responsible for damages irrespective of whether he was negligent.

▮ As to the first area (extending sovereign immunity to the contractor), it would appear that the court relied to some extent upon the rationale that a "contractor is not liable if he has merely carried out carefully the plans, specifications and directions given him, since in that case the responsibility is assumed by the employer, at least where the plans are not so obviously defective and dangerous that no reasonable man would follow them." Prosser, Torts (4 ed.) § 104 at p. 681; Annotation, 21 A. L. R. 1229, 1231. There is some authority which reaches the same result in cases involving construction contracts where the state is a party. Most of that authority, however, holds that the contractor shares the immunity of the state, rather than applying Prosser's rule. The courts are nearly unanimous in allowing an action against a public contractor when negligence or a willful tort is involved. However, in those instances where the contractor follows the plans, specifications, and directions, but damages result from the performance of the contract, there is a divergence of views as to whether or not the contractor can be held liable. Annotation, 9 A. L. R. 3d 382.

In 1934, this court held that a contractor who had followed the plans and directions of the state in blasting operations had committed no wrong and therefore could not be held liable for damages which resulted from the performance of the contract. Nelson v. McKenzie-Hague Co. 192 Minn. 180, 256 N. W. 96. In

1968, this court held pile driving to be an inherently dangerous or ultrahazardous activity and further stated:

"* * * Even though it is not conduct which is so hazardous or lacking in social utility that it should be prohibited, we conclude that it is the kind of activity that should not be permitted without liability for substantial damage to property actually resulting from its performance." Sachs v. Chiat, 281 Minn. 540, 544, 162 N. W. 2d 243, 246, citing Berg v. Reaction Motors Div. 37 N. J. 396, 405, 181 A. 2d 487, 492 (1962).

The following authorities, covering a period from 1939 to 1970, have held that the doctrine of sovereign immunity is not to be extended to a contractor who engages in an ultrahazardous or inherently dangerous activity even though he follows the specifications and directions of the sovereign. Lobozzo v. Adam Eidemiller, Inc. 437 Pa. 360, 263 A. 2d 432 (1970) ; Smith v. Lockheed Propulsion Co. 247 Cal. App. 2d 774, 790, 56 Cal. Rptr. 128, 141 (1967) ; Ellison v. Wood & Bush Co. 153 W. Va. 506, 170 S. E. 2d 321 (1969) ; The Whitman Hotel Corp. v. The Elliott & Watrous Engineering Co. 137 Conn. 562, 79 A. 2d 591 (1951) ; and Bluhm v. Blanck & Gargaro, Inc. 62 Ohio App. 451, 24 N. E. 2d 615 (1939).

Nelson v. McKenzie-Hague Co. *supra,* is often cited as a sovereign-immunity case, although this is not a valid interpretation. In stating its holding, the court said:

"* * * Having committed no wrong, defendant should not be subjected to liability. It is not saved by the state's immunity from suit, but by its own innocence of wrongful acts resulting in liability as for tort." 192 Minn. 189, 256 N. W. 100.

Nelson is no longer good law in Minnesota, having been overruled sub silentio in Sachs v. Chiat, *supra,* and we adhere to the holding in Sachs that pile driving is an inherently dangerous or ultrahazardous activity and hold that the doctrine of sovereign immunity is not a defense available to the contractor performing

it even though he follows the specifications and directions of the sovereign.

Directing our attention to the hold-harmless agreement, it is clear from this provision alone the state did not intend that Ashbach be extended any immunity. It intended that Ashbach act as an independent contractor and that it be responsible for any and all damage caused. The trial court did not give full credit to that provision as it is worded. The court felt that the words "indemnify and save harmless" contemplated that the contractor would assume all liability only for its negligence and resulting damage to third parties. The hold-harmless provision in most construction contracts does not remove or destroy the defenses to third-party claims—e. g., freedom from negligence and lack of causal connection. If the operation were not ultrahazardous or inherently dangerous, Ashbach would have those defenses. However, at the time of the execution of the contract, both the state and the contractor were governed by Sachs v. Chiat, *supra*. The state chose not to be required to compensate by eminent domain, agreeing instead with the contractor that all damage to third parties be adjusted and paid by the contractor. It was then recognized that certain problems were present and that there were dangerous aspects in the nature of the work. The contractor was not forced to sign the contract, but it willingly did so and agreed to the hold-harmless provision. Any additional expense occasioned by that provision should be reflected in the contractor's final bid. That additional cost also had to be a part of the state's final costs. We are now asked to rule that this provision is of no force and effect—that plaintiff should be compelled to recover from the state by inverse condemnation proceedings. The trial court supported this position and suggested that plaintiff's proper remedy would be in condemnation, citing Thomsen v. State, by Head, 284 Minn. 468, 170 N. W. 2d 575 (1969). That case is good authority for the use of inverse condemnation proceedings by a person seeking recovery for damages caused by a relocation of a highway. It does not, however,

suggest that an injured party cannot seek recovery against a contractor who has been negligent or who has engaged in an inherently dangerous and ultrahazardous activity.

During the pendency of this appeal, plaintiff did in fact follow the trial court's suggestion and brought a mandamus proceeding to compel inverse condemnation by the state. The state answered and brought in Ashbach and others by a third-party complaint, alleging that they were responsible and that they had agreed to save the state harmless. The same trial court rejected the state's claim, dismissed the third-party complaint, and found that the state had taken plaintiff's property. Hence, the state is in the position of paying twice, in part, for the same damage. An appeal in that matter is pending in this court, of which we may take judicial notice. See, State ex rel. Craig v. Tahash, 263 Minn. 158, 116 N. W. 2d 657 (1962).

Great stress is laid on the fact that the contractor did what it was told to do by state inspectors and project engineers. Plaintiff's offer of proof does bear this out. However, it further appears from the offer of proof that plaintiff would testify that complaints were made to both Ashbach and K. B. V. that their operations were causing excessive damage to the buildings in question, even to the extent that plaintiff's tenants were complaining. Plaintiff was given this answer: "You needn't worry about that, we have insurance."

The argument that it is a hardship to compel defendants to respond in damages when they were doing merely what the state directed them to do is poor and unavailing. In entering into the contract, the defendants knew, or should have known, that their activities could possibly cause damage. Any contractor of reasonable experience should be aware of this possibility. Defendants cannot assert the defense that there will be no liability as long as they adhere to the terms of the contract.

The duty of the contractor includes taking specific precaution or using an alternative method. The contract allegedly did provide for alternative methods, and in fact the record shows that

an alternative method was used in the case of one adjoining property owner. To effect the change in that instance, additional costs were incurred of approximately $100,000, although it is possible that not all of that amount was charged to the contractor. Even though some changes might produce an added expense to a contractor, a hardship of this kind generally is not a basis for relieving a person of liability, especially where the contingency has been provided against in advance, by insertion of a hold-harmless provision, as in the instant case. There is no reason why that provision cannot be given full force and effect. We do not agree with defendants' argument that we disregard the provision because of the comfortable knowledge that the state is always good for the damage by resort to condemnation. This argument would not have arisen if the contractors were doing work for a private party. We see no valid reason for applying different logic when the state is a party.

We hold, therefore, that defendant Ashbach should not have been granted summary judgment for two reasons: First, we adhere to our holding in Sachs v. Chiat, *supra,* that pile driving is an inherently dangerous or ultrahazardous activity and under such circumstances the sovereign immunity of the state should not be extended; and secondly, the trial court as a matter of law should not have found and concluded that the hold-harmless agreement was invalid.

Concerning defendant K. B. V. it is apparent that the trial court mistakenly made a finding of fact that defendants were not negligent, rather than making a determination as to whether or not there was evidence to support a finding of negligence. In Whisler v. Findeisen, 280 Minn. 454, 456, 160 N. W. 2d 153, 155 (1968), this court said that, in cases where there is a motion for summary judgment, even if—

"* * * it is unlikely that defendant will prevail upon trial, that fact is not a sufficient basis for refusing defendant his day in court with respect to issues which are not shown to be sham,

frivolous, or so unsubstantial that it would obviously be futile to try them."

We see no reason why a different holding should be required if the defendant is the moving party. If plaintiff has made an offer of proof of any evidence to support a finding of negligence on the part of a defendant, summary judgment should not be granted in favor of defendant.[1] See, also, City of Coon Rapids v. Suburban Engineering, Inc. 283 Minn. 151, 157, 167 N. W. 2d 493, 497 (1969); Donnay v. Boulware, 275 Minn. 37, 45, 144 N. W. 2d 711, 716 (1966); and Ahlm v. Rooney, 274 Minn. 259, 143 N. W. 2d 65 (1966).

■ This is not intended as an indiscriminate reversal of the trial court's finding of no negligence on the part of K. B. V. Such might well be the finding of a jury when the case is tried. However, there was no showing by defendant K. B. V. that the issues were so sham, frivolous, or unsubstantial that it would be obviously futile to try them. The burden of showing an absence of factual issues rests with the moving party, and the nonmoving party has the benefit of that view of the evidence most favorable to him. Ahlm v. Rooney, *supra.*

Plaintiff did in fact offer to prove that defendant K. B. V. did cause excessive vibrations by the method it employed to rip up the old pavement; that such conduct was unnecessary and negligently performed; and that an alternative method of removing pavement was available. K. B. V. disputed much of the offer, but again it was necessary to view the disputed facts in the light most favorable to plaintiff.

---

[1] In summary judgment proceedings under Rules of Civil Procedure, Rule 56, the court cannot summarily try fact issues. The court merely rules that there are no genuine issues as to material facts and decides questions of law. While there is no objection to a court's making findings of fact if it wishes to do so—and such findings may well be helpful in making clear the basis of the trial court's decision—they are not entitled to the respect which an appellate court is required to give findings made pursuant to Rule 52.01. See, 3 Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 1242.

■ Defendants contend that the action should be dismissed on the ground that Minn. St. 541.051 provides that such actions be brought within 2 years of discovery of the defective condition or injury.[2]

Upon a review of the record it appears that plaintiff knew of the damage in November 1964 and again during May and June 1965. Plaintiff did not bring its action until July 1968. Hence, defendants contend that the statute of limitations has expired. This defense was not affirmatively pleaded by defendants nor was it raised before the trial court until after plaintiff's offer of proof. Rules of Civil Procedure, Rule 8.03 provides that the statute of limitations must be pleaded as an affirmative defense.

■ Even without the requirement set forth in Rule 8.03, defendants' position is not well taken inasmuch as the statute relates to an injury arising out of a defective and unsafe condition of an improvement to real property. The legislative intent in employing the words "defective and unsafe condition of an improvement to real property" in § 541.051 cannot be construed to cover the defendants' pile driving and pavement removal. Furthermore, the statute became effective in 1965, whereas plaintiff first noticed damage late in 1964. It would seem incongruous to apply the statute retroactively.

---

[2] Minn. St. 541.051, subd. 1, provides: "Except where fraud is involved, no action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or construction of such improvement to real property more than two years after discovery thereof, nor, in any event more than ten years after the completion of such construction. This limitation shall not be applied in favor of any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe conditions of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action."

442

We conclude, therefore, that the order of the trial court granting defendants summary judgment be reversed and the matter remanded to proceed to trial, consistent with the decision herein.

Reversed and remanded.

MR. JUSTICE OTIS, having disqualified himself subsequent to oral argument, took no part in the consideration or decision of this case.