ALBANY ROLLER MILLS, INC., et al., Respondents,

v.

NORTHERN UNITED FEEDS AND SEEDS, INC., et al., Defendants,

Leonard Jelinski, Appellant.

No. C4–86–533.

Court of Appeals of Minnesota.

Dec. 16, 1986.

Norman B. Kemper, Fletcher & O'Tool, St. Cloud, for respondents.

Douglas P. Anderson, Rosenmeier & Anderson, Little Falls, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

The basis of this litigation is a wholesale feed contract between Albany Roller Mills, Inc., and Northern United Feeds and Seeds. The trial court, holding that the contract's terms precluded an oral modification, and that the evidence did not establish a genuine issue of material fact as to a novation or a waiver of the contract, granted summary judgment in favor of Albany. We reverse and remand.

## FACTS

On July 5, 1983, respondent Albany Roller Mills, doing business as Holdingford Mill (hereinafter Albany), entered into a contract with Northern United Feeds and Seeds Inc. (Northern United). The contract was signed by respondent David Thelen on behalf of Albany, and appellant Leonard Jelinski, on behalf of Northern United. Although Northern United was held out to be a corporation, it was actually a sole proprietorship, owned and controlled by Jelinski. Jelinski is, therefore, personally liable for the proprietorship's debts.

Pursuant to the contract, Jelinski bought feed on credit from Albany to resell to farm customers. Albany agreed to pay Jelinski a commission for the feed sold. Jelinski was to pay the net balance due Albany within seven days after invoice. The contract further provided:

> To break this contract agreement, the signature of the president of both corporations is needed.

Jelinski, using a truck and trailer, solely operated the business until late 1983, or early 1984, when he was joined by Richard Prosser. Prosser began handling close to 90% of the sales. Thelen knew that Prosser hoped to buy the feed delivery business from Jelinski.

By late May 1984, Prosser had picked up, but not paid for, over $20,000 of feed from Albany. Thereafter, Thelen refused to allow Albany to sell more feed to Prosser and Jelinski until they met with him to resolve the debt. Jelinski then took possession of the pickup truck and trailer used in delivering the feed and refused to return them to Prosser. The parties met to discuss the debt at Albany's premises on June 8, 1984. They were joined by Pat Meier, the manager of Holdingford Mill. At this meeting, Thelen agreed to resume selling feed to Prosser, provided that Prosser made payments consistent with a handwritten contract negotiated that day between Albany and Prosser. Moreover, pursuant to this agreement, Prosser agreed to pay the entire outstanding debt of Northern United. This agreement was written, and later typed, on Albany's letterhead by Pat Meier. No one signed the agreement.

Jelinski claims that at this meeting, Thelen, on behalf of Albany, agreed to release him from any additional liability on the original contract provided that he deliver the truck and trailer to Prosser to enable him to continue the business. Jelinski further claims that Thelen agreed to release him because Thelen had worked out an agreement with Prosser. Thelen denies releasing Jelinski. Although Thelen admitted that he recalled the conversation, he claimed that he refused to release Jelinski because he was worried that Prosser would default on the debt.

Jelinski delivered the pickup and trailer to Prosser on June 8, 1984. Prosser made two payments on the outstanding balance, totaling $3150. Albany then brought this action to recover the unpaid balance. Prosser was named in the original suit, but upon filing a petition in bankruptcy, he was duly discharged from his debts on or about July 15, 1985. Albany then moved for summary judgment against Jelinski, claiming that the contract precluded an oral modification.

The trial court ruled that Minn.Stat. § 336.2–209 (1984) applied to the contract, and thus, it could only be modified or rescinded by a writing signed by both parties. The court stated that Jelinski had introduced no evidence indicating the existence of a signed agreement modifying the contract. The court further stated that Jelinski had offered no evidence indicating the presence of the dual elements of mutual agreement and consideration necessary to prove a novation. The court concluded that Jelinski had raised no genuine issue of material fact as to either a novation or a waiver, and thus granted Albany's motion. Jelinski appealed the decision.

## ISSUE

Did the trial court err in determining that no genuine issue of material fact existed to preclude granting summary judgment in favor of Albany?

## ANALYSIS

On a motion for summary judgment the trial court must view the evidence in the light most favorable to the nonmoving party. The court must grant the motion

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law.

Minn.R.Civ.P. 56.03. On appeal, this court must determine whether any issues of material fact exist, or whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

### 1. *Application of U.C.C. 336.2–209*

The trial court correctly concluded that the Uniform Commercial Code governed the contract, as it was a sale of goods between merchants. The trial court further stated that Minn.Stat. § 336.2–209 (1984) applied to the following contractual provision:

To break this contract agreement, the signature of the president of both corporations is needed.

The court interpreted "break" as including both modifying or rescinding the contract. Section 336.2–209 provides:

(1) An agreement modifying a contract within this article needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the statute of frauds section of this article (section 336.2–201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

*Id.*

Appellant argues that the court erred in determining that "break" meant both a modification or a rescission of the contract. Thus, appellant argues that 336.2–209 does not govern the contract.

It is well established that where the intention of the parties may be gained wholly from the writing, the construction of the contract is for the court. *Donnay v. Boulware*, 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). In interpreting the terms of a contract, the court must give the language its plain and ordinary meaning. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). The terms must be read in the context of the entire contract, and will not be construed as to lead to a harsh or absurd result. *Anderson v. Connecticut Fire Insurance Co.*, 231 Minn. 469, 473, 43 N.W.2d 807, 811 (1950).

■ In applying these principles to interpret the term "break," we believe the parties intended to require the signatures of the presidents of both corporations for any change which would substantially alter the parties' rights. Breaking the written contract and replacing it with an oral contract is such a significant change. Therefore, the trial court correctly determined that 2–209 applied to this provision.

### 2. *Modification or Waiver*

■ The trial court stated that Jelinski had produced no evidence indicating the existence of a signed agreement modifying the contract, thereby concluding that the original contract was in force. Appellant argues, however, that even if the contract's terms did preclude an oral modification, respondent waived the requirement of a writing and orally agreed to release him.

Although there are no Minnesota cases on this issue, several cases from other jurisdictions construing U.C.C. § 2–209(4) have held that the requirement of a writing may be waived and result in an effective oral modification. *See, e.g., Double-E Sportswear Corp. v. Girard Trust Bank*, 488 F.2d 292 (3rd Cir.1973); *J.W. Goodliffe & Son v. Odzer*, 283 Pa.Super. 148, 423 A.2d 1032 (1980), *Gorge Lumber Co. v. Brazier Lumber Co.*, 6 Wash App. 327, 493 P.2d 782 (1972); *see also* White & Summers, *Uniform Commercial Code*, § 1.5 at 45–46 (2d ed. 1980); 2 Hawkland, *Uniform Commercial Code Series*, § 2–209:03 at 135–40 (1984).

■ The definition of "waiver" is the intentional relinquishment of a known right. *Seavey v. Erickson*, 244 Minn. 232, 241, 69 N.W.2d 889, 895 (1955). Under these facts, there remains a genuine issue of material fact as to whether Thelen intended to waive the statute of frauds.

### 3. *Release or Novation*

Appellant claims that the parties agreed to modify their contract and release him from the debt. He claims that Thelen agreed to release him if he would deliver his truck and trailer to Prosser. Appellant further claims that the parties mutually agreed to a novation, substituting Prosser as the party responsible for the amount due.

■ A novation extinguishes the original debt or obligation against the original debtor, and shifts the debt, by mutual agreement, to a new party. A proper novation thus requires both mutual agreement and consideration. *Hanson v. Nelson*, 82 Minn. 220, 221–222, 84 N.W. 742, 743 (1901). The trial court stated that appellant had presented no evidence establishing the existence of a novation.

To preclude summary judgment, however, it need not be clear that appellant will prevail on this issue at trial. Appellant need only have shown a genuine issue of material fact as to the existence of a novation. *See Lowry Hill Properties v. Ash-*

*bach Construction*, 291 Minn. 429, 439–40, 194 N.W.2d 767, 774 (1971). We believe that appellant met this burden. Appellant's answers to interrogatories were contained in the district court file at the motion for summary judgment. Appellant was asked what consideration was given by him in return for a release of his contractual obligations. Appellant answered that Thelen had persuaded him to deliver the pickup used in the feed business to Richard Prosser. Appellant further claimed that Thelen had expressly told him that he "was free of the bill owed to Albany Roller Mills since Richard (Prosser) and I have worked it out." Clearly, this evidence, viewed in the light most favorable to appellant, indicates that a material issue of fact remains regarding the issue of novation or release.

### DECISION

The contract between the parties is governed by the Uniform Commercial Code and its terms precluded any oral modification. We remand for trial to determine whether Thelen, as Albany's agent, waived the requirement of a written modification or released Jelinski from his obligation, or whether all of the parties agreed to a novation.

Reversed and remanded.