Jeffrey ANDERSON, et al., Appellants,

v.

STATE of Minnesota, DEPARTMENT
OF NATURAL RESOURCES,
Respondent,

John Doe, Defendant,

Terry Ricks, d/b/a Ricks Aviation,
Respondent,

International Paper Co., f/k/a Champion International Corporation,
Respondent,

and

Steven Ellis, Appellant,

v.

State of Minnesota, Department
of Natural Resources,
Respondent,

John Doe, Defendant,

Terry Ricks, d/b/a Ricks Aviation,
Respondent.

No. A03–679.

Supreme Court of Minnesota.

March 3, 2005.

Gary A. Van Cleve, Christopher J. Deike, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, MN; Stephen F. Rufer, Pemberton, Sorlie, Rufer & Kershner, P.L.L.P., Timothy A. Rundquist, Rundquist Law Office, Fergus Falls, MN, for Appellants.

Mike Hatch, Attorney General, Jerome L. Getz, Assistant Attorney General, St. Paul, MN, for Respondent DNR.

Alexandra B. Klass, Sara J. Peterson, Dorsey & Whitney L.L.P., Minneapolis, MN, for Respondent International Paper.

Craig E. Johnson, Johnson, Ramstad & Mottinger, P.L.L.P., Fargo, ND, for Respondent Terry Ricks, and T.L.T. Aerial AG. Service, Inc.

Marci L. Iseminger, Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett & Storm, Sioux City, IA, and Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, MN, for amici curiae Sioux Honey Association Cooperative.

John P. Mandler, Kristin R. Eads, Faegre & Benson L.L.P., Minneapolis, MN, for amici curiae CropLife America, Minnesota Agricultural Aircraft Association and Minnesota Crop Production Retailers.

Bruce M. Kleven, Attorney at Law, St. Paul, MN, for amicus curiae Minnesota Farm Bureau Federation.

Daniel Weaver, Vice President, Navasota, TX, for amicus curiae American Beekeeping Federation, Inc.

## OPINION

ANDERSON, RUSSELL A., Justice.

We granted the petition of appellants Jeffrey Anderson, James Whitlock and Steven Ellis (the beekeepers) to review a decision of the court of appeals affirming summary judgment in favor of respondents Department of Natural Resources (DNR) and International Paper Company (IP) on claims of negligence, negligence per se and nuisance and reversing the denial of summary judgment for the DNR on a portion of the common-law negligence claim. We affirm in part, reverse in part and remand.

Appellants Steven Ellis, Jeffrey Anderson, and James Whitlock are migratory commercial beekeepers who maintain beehives in Douglas, Pope, Todd, Stearns, Otter Tail, and Morrison counties. The beekeepers do not own the land on which they place their hives; and in lieu of rent, the beekeepers give a "thank-you gesture" of honey or a small amount of money to the landowners. The hives are located on land near privately owned groves or "plantations" of poplar trees grown for paper production and fuel research. The DNR and IP either own or manage the groves, and the beekeepers hold no interest in them.

When cottonwood leaf beetles began invading the DNR and IP groves in 1997 and 1998, respondents retained commercial spray operators to apply Sevin XLR Plus, a carbaryl-based pesticide toxic to bees. On one occasion, July 21, 1999, the DNR arranged through a chemical supplier to have an independent contractor spray a hybrid poplar plantation close to the location of some of Ellis' hives. During this spraying, which the parties refer to as the "Swanson incident," landowner Dale Swanson estimated that pesticide was applied "perhaps a hundred feet" from 32 of Ellis' bee colonies. Minnesota Department of Agriculture laboratory analysis confirmed that at least some of Ellis' bees died from carbaryl poisoning in the apparent "overspray" incident. During other sprayings, the beekeepers allege that the DNR and IP knew bees were foraging on land that the respondents either own or manage but directed that Sevin XLR Plus be applied anyway, resulting in dead bees and infected hives.

The beekeepers commenced actions alleging, inter alia, that (1) the DNR and IP negligently created an unreasonable risk of harm to the beekeeping operations; (2) that the DNR and IP were negligent per se, in violation of the Minnesota Pesticide Control Act, which prohibits the use of pesticides in a manner that is inconsistent with label directions; and (3) that the DNR and IP created a private nuisance. Ellis subsequently dismissed his claims against IP upon discovering that his hives were not near IP's land. All parties

moved for summary judgment. The district court granted summary judgment for respondents, dismissing all claims except for the claim against the DNR for damages resulting from the Swanson incident. On the appeal of the beekeepers and by notice of review by the DNR, the court of appeals reversed the denial of the dismissal of the overspray claim against the DNR and affirmed the dismissal of the remaining claims. *Anderson v. Dep't of Natural Res.*, 674 N.W.2d 748, 760 (Minn.App. 2004).

## I.

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001); *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 229, 219 N.W.2d 641, 646 (1974). On appeal from summary judgment, we consider whether the lower courts erred in applying the law and whether there are any genuine issues of material fact for trial. *Northern States Power Co. v. Minnesota Metro. Council*, 684 N.W.2d 485, 491 (Minn.2004). The existence of a duty generally is a question of law for this court to decide de novo. *H.B. and S.B. By and Through Clark v. Whittemore*, 552 N.W.2d 705, 707 (Minn. 1996).[1]

Landowners owe a duty to use their property so as not to injure that of others. *Farrell v. Minneapolis & R.R. Ry. Co.*, 121 Minn. 357, 361, 141 N.W. 491, 492 (1913); Dan B. Dobbs, *The Law of Torts* § 231 (2000) (landowners owe a duty not to create "a serious interference with [neighboring landowers'] use and enjoyment of land by pollution or the like."). We have explained this rule over many years and in many contexts. In *Lorshbough v. Township of Buzzle*, we held that a county in charge of a township dump was liable for forest fire damage to the plaintiffs' real property as well as personal property where it was "reasonably foreseeable" that conditions at the dump violative of Minnesota Pollution Control Agency standards would cause the damage. 258 N.W.2d 96, 102 (Minn.1977). In *Sime v. Jensen*, we recognized that a landowner who elevates his land above the level of adjoining land will act reasonably by constructing a retaining wall to keep soil away from his neighbor. 213 Minn. 476, 480, 7 N.W.2d 325, 327 (1942). In *Johnson v. Seifert*, we held that an owner of lakefront property may use the abutting lake for recreational purposes, "provided such use is reasonable[.]" 257 Minn. 159, 168–69, 100 N.W.2d 689, 696–97 (1960). In *Wilson v. Ramacher*, we held that landowners may divert excess surface water to neighboring property as long as doing so constitutes a "reasonable use" based on balancing "whether the benefit to the diverter's land outweighs the harm to the land receiving the surface waters." 352 N.W.2d 389, 393–94 (Minn.1984). In *Peterson v. Balach*, we charged land entrants as well as land possessors to act reasonably as we abolished distinctions between licensees and invitees. 294 Minn. 161, 173–74, 199 N.W.2d 639, 647 (1972). In *Doe v. Brainerd International Raceway, Inc.*, we recognized that an auto-racing facility must be "reasonably safe for its patrons, which includes controlling and supervising other patrons to prevent foreseeable harm." 533 N.W.2d 617, 621 (Minn.1995).

---

**1.** "The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995).

Given the landowner's general duty to adjoining or nearby premises, liability has been regularly imposed in cases concerning pesticide spray that drifted and killed bees. *See, e.g., McKennon v. Jones,* 219 Ark. 671, 244 S.W.2d 138, 139 (1951); *Lundberg v. Bolon,* 67 Ariz. 259, 194 P.2d 454, 459 (Ariz.1948); *Miles v. A. Arena & Co.,* 23 Cal.App.2d 680, 73 P.2d 1260, 1263 (1937); *see generally* Jonathan M. Purver, *Liability for injury caused by spraying or dusting of crops,* 37 A.L.R.3d 833, 863–68 (1971 & Supp.2004). However, liability has not been imposed in cases involving bees that came in contact with pesticides while foraging on the land of another on the theory that bees were trespassers. *Lenk v. Spezia,* 95 Cal.App.2d 296, 213 P.2d 47, 51 (1949) (holding that owner of honey bees could not recover for loss of bees that procured the pesticide while "trespassing on the fields of other owners of land * * * unless the poison was distributed wantonly, maliciously, or with the deliberate intent to injure or destroy the bees"); *see also Bennett v. Larsen Co.,* 118 Wis.2d 681, 348 N.W.2d 540, 547–48 n. 3 (Wis.1984) (stating that while trespass theory might not be appropriate for honey bees that by nature are foragers, landowners owe no duty to protect the bees, "ex-

cept that the land possessor cannot intentionally or wantonly destroy the bees").

◼ In Minnesota, a landowner owes only a limited duty to trespassing livestock. *Witherell v. Milwaukee & St. Paul Ry. Co.,* 24 Minn. 410, 414 (1878). Instead, liability for trespassing animals "could only be predicated on willful or wanton negligence." *Lindemann v. Chicago, R.I. & P. Ry. Co.,* 154 Minn. 363, 365, 191 N.W. 825, 825–26 (1923). But once the landowner discovers the trespassing animals' presence, the landowner is "bound to use reasonable care to avoid injuring them." *Witherell,* 24 Minn. at 414.

◼ Here, the beekeepers alleged that the DNR and IP intentionally sprayed pesticides with knowledge that foraging honey bees would be killed and/or would bring the pesticide back to the hives. Consequently, identifying the status of honey bees is unnecessary here because even if we were to classify bees as trespassers, a landowner is under a duty of reasonable care "once he knows or is on notice of both the trespasser's presence and the impending danger." Dobbs, *supra* at 593.[2] If, as the beekeepers allege, the DNR and IP had actual knowledge or were on notice of foraging honey bees, they may have come under a duty of reasonable care.[3]

2. As a general rule, trespassing livestock must have committed a "wrongful entry" in the land possessor's eyes. *Black's Law Dictionary,* 1541 (8th ed.2004). Honey bees join native bees in pollinating a wide variety of crops, to the benefit of the party who plays host to the bees. *See* Minnesota Department of Agriculture, *Apiary Program, at* http://www.mda.state.mn.us/apiary (last visited February 16, 2005). Accordingly, it might prove problematic to characterize bees as unwelcome on land where trees and other vegetation are grown for commercial purposes, particularly where agricultural need for bees is at least as great as the need for pesticides.

3. We understand that Minnesota beekeepers must register their apiaries with the Department of Agriculture each year. Minn.Stat. § 19.64, subd. 1 (2004). We also understand that the department makes the registry information readily available by phone and on the Internet. *See* Minnesota Department of Agriculture, *Apiary Program, at* http://www.mda.state.mn.us/apiary (last visited February 16, 2005); searchable "Honey Bee Location" Internet database *at* http://www2.mda.state.mn.us/webapp/lis/ apiaryloc—default.jsp (last visited February 16, 2005). However, we do not view such ready access to this information as obligating land possessors to investigate for the presence of honey bees. Some states have pesticide

It is true, as the DNR and IP note, that the beekeepers' common-law negligence claim is somewhat atypical. Most pesticide-related litigation involves actions against those who make or sell pesticide, or against applicators who allow pesticide to drift to neighboring land. Robert F. Blomquist, *Applying Pesticides: Toward Reconceptualizing Liability to Neighbors for Crop, Livestock and Personal Damages from Agricultural Chemical Drift,* 48 Okla. L.Rev. 393, 395–96 (1995). In this case, however, no manufacturer is a party, and it is the bees—not the chemicals—that have traveled to the neighboring land.

■ Nevertheless, we cannot ignore comprehensive efforts addressing pesticide hazards. Congress has enacted the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 (2004), which regulates pesticide marketing and use and authorizes the Environmental Protection Agency (EPA) to enforce pesticide rules and approve pesticide labels. States may enact statutes governing pesticide use as long they do not impose requirements "in addition to or different from FIFRA requirements." *Dow Agrosciences LLC v. Bates,* 332 F.3d 323, 328 (5th Cir.2003), *pet. for cert. granted,* —— U.S. ——, 124 S.Ct. 2903, 159 L.Ed.2d 810 (2004). To that end, the Minnesota Legislature enacted the Minnesota Pesticide Control Act, Minn.Stat. § 18B (2004), which balances the state's environmental and agricultural interests and authorizes the state Commissioner of Agriculture to adopt and enforce pesticide rules within the bounds of federal law.

■ As for judicial involvement, FIFRA preempts state-based negligence actions premised on breach of warranty, failure to warn, and other causes of action impinging on the EPA's power to enforce labeling requirements. *Dow Agrosciences LLC,* 332 F.3d at 333; *Netland v. Hess & Clark, Inc.,* 284 F.3d 895, 898 (8th Cir. 2002); *Nat'l Bank of Commerce v. Dow Chem. Co.,* 165 F.3d 602, 608 (8th Cir. 1999). Other state-based negligence actions are permitted. *Peterson v. BASF Corp.,* 675 N.W.2d 57, 70 (Minn.2004) (state consumer-fraud claim premised on improper marketing not preempted), *pet. for cert. filed,* 73 USLW 3076 (July 16, 2004, no. 04–81); *Goeb v. Tharaldson,* 615 N.W.2d 800, 819 (Minn.2000) (negligent misrepresentation and negligent testing claims not preempted). *See also Dosdall v. Smith,* 415 N.W.2d 332, 335 (Minn.App. 1987) (affirming finding of negligence against licensed pesticide applicator and agricultural consultant); *Red River Spray Serv., Inc. v. Nelson,* 404 N.W.2d 332 (Minn.App.1987) (affirming judgment against pesticide applicator who oversprayed and damaged plaintiff's crops). Given this background and the land possessor's general duty to use property in a way that does not injure others, it seems to us that the beekeepers' common-law action for the alleged loss of the bees foraging on DNR and IP land is a viable one.

■ To determine whether summary judgment was properly granted against the beekeepers' negligence claim, we examine the record in the light most favorable to them. Based on documents that

---

notification programs under which beekeepers provide written notice of their hives to surrounding commercial agriculture operations or to authorities charged with granting pesticide-permit applications. *See* Theodore A. Feitshans, *An Analysis of State Pesticide Drift Laws,* 9 San Joaquin Agricultural L.Rev.

37, 70–78 (1999). It seems more workable and practical that beekeepers who want protection from pesticide application provide notice to those who possess land where the beekeepers know or should know their bees will forage.

the beekeepers have provided, we conclude that the beekeepers satisfied their initial burden of producing evidence that the DNR and IP had actual knowledge or notice of foraging honey bees, and that the DNR and IP may have acted unreasonably so as to breach a common-law duty. The minutes of a January 2000 meeting indicate that the beekeepers informed the DNR and IP of foraging honey bees, and IP "acknowledg[ed] a need to be looking for new products that will control Cottonwood Leaf Beetle but have less impact upon bees." In addition, records kept by beekeeper Anderson suggest that the DNR and IP directed that spraying take place after that meeting, and that the DNR altered its policy for using Sevin XLR Plus. We also note that the beekeepers provided affidavits from experts who challenged Department of Agriculture testing procedures and who concluded that Sevin XLR Plus was to blame for the bee deaths. Accordingly, we conclude that summary judgment against the beekeepers was improper.[4]

■■■■ As for the Swanson or overspray incident, the court of appeals reversed the district court's denial of summary judgment under the independent-contractor defense. The general rule is that an employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Conover v. Northern States Power*, 313 N.W.2d 397, 403 (Minn.1981) (citing Restatement (Second) of Torts § 409 (1965)). But an employer of an independent contractor may be found negligent when it retains detailed control over a project and then fails to exercise reasonably careful supervision over that project. *Conover*, 313 N.W.2d at 401. Here, allegations of liability were based on evidence that the DNR retained control over the operative detail of the work, was aware of beehives adjacent to the Swanson property but failed to inform the contractor, and forgot to obtain the landowner's permission before directing the contractor to spray the product. Although the DNR denied the allegations, as the district court concluded, the allegations were sufficient to preclude summary judgment in favor of the DNR.

## II.

■■■■ The beekeepers also made claims of negligence per se. Although negligence per se may be pleaded separately from negligence, the two causes of action are inseparably intertwined. "Negligence per se is a form of ordinary negligence that results from violation of a statute." *Seim v. Garavalia*, 306 N.W.2d 806, 810 (Minn.1981). "A per se negligence rule substitutes a statutory standard of

---

4. We are neither "plowing new ground," as the dissent says, nor recognizing a new common-law duty. In Minnesota, upon discovery of trespassing livestock, landowners "are not authorized to injure them willfully or carelessly, but are bound to use reasonable care to avoid injuring them." *Witherell*, 24 Minn. at 414. That pesticide litigation more typically involves chemical drift ought not to relieve a commercial enterprise from the duty of reasonable care in the application of pesticides to avoid injuring the commercial enterprise of its neighbor. "Every one engaged in any business or occupation must use reasonable precautions to prevent such business or occu-pation from working injury to others." *Binder v. Perkins*, 213 Kan. 365, 516 P.2d 1012, 1016 (1973) (paraphrasing from *Lobenstein v. McGraw*, 11 Kan. 645, 649 (1873)). Here, we are asked to decide whether, upon discovery of honey bees from neighboring apiaries foraging on their respective properties, the DNR and IP had a duty of reasonable care in the spraying of pesticides. By application of traditional common-law principles, we believe they would. To hold otherwise would carve out an exception of liability for damage to honey-producing operations. In referencing policy in support of our determination, we are not recognizing a new common-law duty.

care for the ordinary prudent person standard of care, such that a violation of a statute * * * is conclusive evidence of duty and breach." *Gradjelick v. Hance*, 646 N.W.2d 225, 231 n. 3 (Minn.2002). For a statutory violation to satisfy the duty and breach elements, the person harmed by the violation must be among those the legislature intended to protect, and the harm must be of the type the legislature intended to prevent by enacting the statute. *Anderson v. Anoka Hennepin Ind. Sch. Dist. 11*, 678 N.W.2d 651, 662–63 (Minn.2004). Summary judgment is proper if there is a "complete lack of proof on any of the essential elements" of a negligence per se claim. *Gradjelick*, 646 N.W.2d at 234.

The Minnesota Pesticide Control Act prohibits the use of pesticides in a manner "that is inconsistent with a label or labeling as defined by FIFRA." Minn.Stat. § 18B.07, subd. 2(a)(1) (2004).[5] The label

directions of the Sevin XLR Plus product specified that certain precautions should be taken with regard to honey bees because, as the label warned, the product was "highly toxic" to bees. The label also said: "Do not apply this product or allow it to drift to blooming crops or weeds if bees are foraging in the treatment area." [6]

■■■■ In support of their motion for summary judgment, the DNR and IP offered the affidavit testimony of the director of the Minnesota Department of Agriculture Pesticide Enforcement Section who said that "in order to be in violation of the label and in violation of the law, an applicator would need to spray Sevin XLR Plus at a time where there were a significant number of bees actively foraging in the treatment site and a significant number of blooming crops or weeds present." The agency official, who served as an expert for the DNR and IP, said that his label interpretation was consistent with

**5.** Minnesota Statutes § 18B.07 provides in relevant part:

18B.07 Pesticide use, application, and equipment cleaning.

Subdivision 1. Pesticide use. Pesticides must be applied in accordance with the product label or labeling and in a manner that will not cause unreasonable adverse effects on the environment within limits prescribed by this chapter and FIFRA.

Subd. 2. Prohibited pesticide use. (a) A person may not use, store, handle, distribute, or dispose of a pesticide, rinsate, pesticide container, or pesticide application equipment in a manner:

(1) that is inconsistent with a label or labeling as defined by FIFRA;

(2) that endangers humans, damages agricultural products, food, livestock, fish, or wildlife; or

(3) that will cause unreasonable adverse effects on the environment.

As indicated previously, a state may regulate pesticide use as long as the regulation does not permit uses prohibited by federal law. 7 U.S.C. § 136v(a) (2004).

**6.** The entire "bee caution" reads:

This product is highly toxic to bees exposed to direct treatment or residues on blooming crops or weeds. However, field studies have shown that SEVIN® brand XLR PLUS Carbaryl Insecticide is less hazardous to honey bees than other carbaryl products when direct application to bees is avoided and the spray residues have dried. For maximum honey bee hazard reduction, apply from late evening to early morning or when bees are not foraging. Do not apply this product or allow it to drift to blooming crops or weeds if bees are foraging in the treatment area. However, applications may be made during foraging periods if the beekeeper takes one of the following precautionary measures prior to bee flight activity on the day of treatment: (1) Confine the honey bees to the hive by covering the colony or screening the entrance or; (2) locate hives beyond bee flight range from the treated area. Precautionary measures may be discontinued after spray residues have dried. Contact your cooperative Agricultural Extension Service or your local Aventis CropScience representative for further information.

that of the EPA and that he found no evidence of a label violation in this case, except for the July 21, 1999 Swanson incident. In opposing the motion, beekeepers offered the affidavit of their expert, an entomologist, who explained the method for determining foraging and non-foraging periods for honey bees as contemplated by the label and concluded that the pesticide use in this case was not consistent with label directions for the Sevin XLR Plus product. The district court characterized the testimony of the state agency expert as the agriculture department's "official position" and noted that "great deference" routinely was given to agency determinations.

■ When reviewing agency decisions, courts "adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minnesota,* 624 N.W.2d 264, 278 (Minn.2001) (quoting *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn. 1977)). But in this case, the expert was not an agency decision-maker engaged in the evaluation of evidence by using his own expertise in an enforcement proceeding or adjudication. The expert's affidavit was obtained for purposes of litigation and was offered less than two weeks before the summary judgment hearing and a year and a half after the state had been sued. Consequently, the expert's interpretation of the pesticide label was not entitled to agency decision-maker deference. Nor, as the DNR and IP claim, was the expert's

opinion entitled to *Seminole Rock* deference. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (holding that administrative agency's construction of its own ambiguous regulation is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation"); *see* John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules,* 96 Colum. L.Rev. 612, 639 (1996) (explaining that "under *Seminole Rock,* the reviewing court asks whether the agency action—typically an enforcement action or adjudication—is consistent with an agency regulation").[7]

■ On motion for summary judgment, a court is to consider all affidavits, along with pleadings, depositions, answers to interrogatories, and admissions from the nonmoving parties as well as moving parties. Minn. R. Civ. P. 56.03. The nonmoving party does not need to produce clear and convincing evidence to defeat a summary judgment motion. The moving party has the burden of showing an absence of factual issues before summary judgment can be granted. *Lowry Hill Properties, Inc. v. Ashbach Const. Co.,* 291 Minn. 429, 440, 194 N.W.2d 767, 774 (1971). Expert testimony about a pesticide label at the summary judgment stage may create genuine issues of fact. *See Netland,* 284 F.3d at 900. Accordingly, the negligence per se claim is also remanded to the district court.

### III.

■ Finally, the beekeepers contend that the DNR and IP created a pri-

---

7. Continued adherence to *Seminole Rock* has come under strong criticism. *E.g.,* Manning, *supra* at 639–40 (arguing that *Seminole Rock* deference violates constitutional separation of powers restrictions by uniting the law-making and law-exposition functions in the same

agency hands). Professor Manning notes that some members of the Supreme Court have expressed doubts as to the wisdom of continued adherence to *Seminole Rock.* Manning, *supra* at 615–17.

vate nuisance on the beekeepers' property. Private nuisance is limited to real property interests. *See Schrupp v. Hanson,* 306 Minn. 151, 235 N.W.2d 822 (1975) (action for damages and to enjoin as nuisance poultry and hog farm maintained by defendants on property adjacent to plaintiffs' residence); *Schmidt v. Village of Mapleview,* 293 Minn. 106, 108, 196 N.W.2d 626, 628 (1972) (stating that "[i]t is elementary that the term 'nuisance' denotes an infringement or interference with the free use of property"); 4 J.D. Lee & Barry A. Lindahl, *Modern Tort Law, Liability and Litigation* § 35:4 (2d. ed.2003) (stating that "a property interest is essential to maintain the action"). The beekeepers lacked the requisite property interest to maintain a private nuisance claim.

## IV.

▮▮▮ The DNR claims official immunity. The district court rejected the argument as it related to the Swanson incident, characterizing the DNR's actions as ministerial, not discretionary, and therefore not subject to official immunity. We agree. *Wiederholt v. City of Minneapolis,* 581 N.W.2d 312, 315 (Minn.1998). The district court did not address immunity surrounding other claims, and the court of appeals did not reach the issue at all. Therefore, the remaining immunity issues may be addressed on remand.[8]

## V.

In summary, we hold that (1) a land possessor with actual knowledge or notice of foraging honey bees on the property comes under a duty of reasonable care in the application of pesticides; (2) the state agency expert's interpretation of the pesti-

cide label was not entitled to judicial deference; and (3) the beekeepers lacked the requisite property interest for a private nuisance claim. We reverse the grants of summary judgment for common-law negligence and negligence per se and remand those claims to the district court. The dismissal of the nuisance claim is affirmed.

Affirmed in part, reversed in part, and remanded to the district court.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

MEYER, Justice (dissenting).

I respectfully dissent from the majority's conclusion that a beekeeper enjoys a common law action for damages to bees that forage on another's land. I do not agree with the broad principle of law on which the majority builds its holding that "[l]andowners owe a duty to use their property so as not to injure the property of *others*" (citing to Dan B. Dobbs, *The Law of Torts* § 231 (2000) (emphasis added)). Neither this court nor any of the authoritative treatises on tort law have ever recognized such a broad duty to *others'* property. A landowner's duty to others is more fairly and narrowly stated as a duty not to create "a serious interference with [neighboring landowners'] use and enjoyment of land by pollution or the like." *Id.* All of the cases cited by the majority in support of a broad duty to *others'* property involve either a violation of agency standards or a circumstance where one landowner's use was interfering with a neighboring landowner's use of

---

8. The DNR and IP also assert that the beekeepers waived vicarious liability at the district court, and we note that at the summary judgment hearing the beekeepers' counsel stated that "[w]e're not claiming vicarious liability. We're claiming direct negligence by both the state and IP[.]"

their own property. The cases simply don't address the very unique situation presented here.

The traditional common law rule regarding negligence claims for injuries to trespassing animals is that "[u]nless otherwise required by statute, a landowner owes no duty with respect to trespassing animals except to refrain from willfully or wantonly injuring them." 65A C.J.S. *Negligence* § 431. The unique situation presented here is the fact that bees fly onto a neighboring landowner's property, the bees remove a substance from the landowner's property, and bring it back to their hive. Only two appellate courts have addressed what duty landowners owe to bees foraging on their property. Both the Wisconsin Supreme Court and the California Court of Appeals have addressed this question, and both courts have concluded that there should be no common law duty owed to bees foraging on a landowner's property. *See Bennett v. Larsen Co.*, 118 Wis.2d 681, 348 N.W.2d 540, 547 n. 3 (Wis.1984); *Lenk v. Spezia*, 95 Cal.App.2d 296, 213 P.2d 47, 51 (1949). The Wisconsin Supreme Court explained this rule in *Bennett*:

> [B]ecause land possessors have the right to reasonably use their property as they see fit, and because bees tend to enter property and there is little the land possessor can do to prevent their entry, there should be no common law duty owed to protect the bees on the property, except that the land possessor cannot intentionally or wantonly destroy the bees.

*Bennett*, 348 N.W.2d at 547–48 n. 3.

Common law liability for damage to bees has been limited to those cases where pesticide spray has drifted onto a neighbor's land and caused damage. The majority is plowing new ground in tort law by recognizing a common law duty owed to foraging bees. The majority concludes that a common law duty to foraging bees springs from the existence of comprehensive federal and state regulation of pesticides. The common law is "the body of law derived from judicial decisions, rather than from statutes or constitutions." *Black's Law Dictionary* 293 (8th ed.2004). It makes no sense to say that a newfound common law duty springs from a duty arising from state or federal regulation—it is more appropriate to grant a remedy to the beekeepers under the principle of negligence per se, which "usually arises from a statutory violation." *Black's Law Dictionary* 1063 (8th ed.2004).

The claim of negligence per se is that pesticides were applied in violation of federal and state regulations. Since the majority concludes that the beekeepers do have the remedy of negligence per se available, there is no reason to create a duty owed to beekeepers, independent from the provisions on the label. It is difficult for me to imagine how a jury could determine that spraying was conducted in a manner that creates an unreasonable risk of harm without reference to the label's requirements. The court should not create a common law duty of care owed to foraging bees.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice MEYER.