CITY OF COON RAPIDS v. SUBURBAN ENGINEERING, INC., AND OTHERS.

167 N. W. (2d) 493.

March 28, 1969—No. 41245.

---

*William Merlin Law Firm, Daniel A. Utter,* and *William Merlin,* for appellant.

*Altman, Geraghty, Leonard & Mulally* and *Kenneth M. Schadeck,* for respondents Suburban Engineering, Inc., and Robert P. Minder.

*Carr & Carr* and *P. H. Carr,* for respondent Dailey Construction Company.

*Strong, Tully & Bush* and *Wellington Tully, Sr.,* for respondent Land & Properties, Inc.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Robert M. Frisbee,* for respondent Vern Donnay Construction Co., Inc.

*LeVander, Zimpfer & Tierney* and *Bernhard W. LeVander,* for respondent Walbon Excavating Company.

*Thomson & Lovett* and *James L. Wahlfors,* for respondents Duane A. Petrowske and Richard D. Ross (a partnership) and Petrowske and Ross, Inc.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

Murphy, Justice.

This is an appeal from a summary judgment for defendants in an action by the city of Coon Rapids seeking damages in connection with defective construction of a storm sewer. Defendants are Vern Donnay Construction Co., Inc., Dailey Construction Company and Land and Properites, Inc., which are two real estate development concerns, and

their agents and associates, Suburban Engineering, Inc., Robert P. Minder, Walbon Excavating Company, Duane A. Petrowske and Richard D. Ross (a partnership), and Petrowske and Ross, Inc. Plaintiff-appellant contends that the trial court was in error in determining that there was no genuine issue for trial.

The complaint alleges that the city sustained damages resulting from the defective installation of a storm sewer by defendants. Defendant Dailey owned property within the city limits which it proposed to develop and sell to the public. Donnay owned property in the adjoining village of Blaine which it proposed to develop and sell. Before Dailey could secure the approval of the city council for its proposed development, it was necessary to establish adequate drainage by the construction of a storm sewer system. Donnay, whose property adjoined the Dailey development, sought to secure the benefits of the proposed storm sewer system for its property and joined with Dailey in installing the improvement. The developers and their engineering firm, Suburban Engineering, Inc., preferred to have the system installed on a private basis rather than have the city do it. The city acquiesced in their proposal and agreed to bear the expense for future maintenance of the system after its installation.

Suburban Engineering designed the system and had the overall responsibility for supervising its installation. The specifications provided:

"The upper one-half of all joints shall be mortared inside and out with cement mortar. This mortar shall be worked into the joints between the pipes and is to be struck off flush with the inside of the pipe and built up to one inch at the joint on the outside of the pipe. The outside joint shall taper off flush with the pipe barrel four inches from the joint. Sufficient mortar shall be placed in the bottom of the pipe bell to assure true alignment of the bore of the pipe."

The contracts for the construction of the project were let to Walbon Excavating Company and Petrowske and Ross, Inc., defendants heretofore named. After the work was completed, the city was assured by the defendant engineering firm that the work had been completed according to specifications. The showing, with reference to whether the city relied

upon the representations of the engineering firm or whether they relied upon the report of their own engineer, is equivocal at best. The city engineer, Keith Caswell, who was employed as a consultant at the time the work was completed, had formerly been associated with some of the defendants. Suburban Engineering recommended acceptance of the job, representing to Caswell that the storm sewer "was installed per the plans and specifications as prepared and was checked by us during construction to be sure that it was a first-class job." It is not clear from the showing presented to the court by the depositions and affidavits that Caswell, acting as city engineer, or his employees actually did any more than make a casual observation of the work after it was completed. Nevertheless, it appears that Caswell did inform the Federal Housing Administration that the storm sewer had been "dedicated to the City and accepted for permanent maintenance." We gather from the record that when the completed job was offered to the city the pipes had been covered from the top and that the opportunity for inspection from the inside was limited. We cannot agree on the basis of the showing made that the evidence would establish, as a matter of law, that the city relied on its own inspection of the job at the time it informed the Federal Housing Administration that the improvement had been completed.

It appears that the job was completed about March 23, 1960, and soon thereafter the city experienced trouble with the system. This difficulty continued to the point where the city called Caswell in 1963 or 1964 to conduct an inspection. On the basis of this inspection, he advised that the problems experienced with the system were the result of noncompliance with specifications in the contract for installation. The inspection covered an area of about one block, which would include at least 200 sections of pipe, none of which were properly installed. Accordingly, the city had to dig up portions of the system and repair it. The precise defect in the installation was that the pipes were not properly mortared at the joints. As a result, sand infiltrated, causing voids underground which resulted in cave-ins.

The city instituted this action against defendants on June 23, 1966, more than 6 years after Caswell's letter to the Federal Housing Adminis-

tration indicating that the work had been completed. The lower court was of the view that the action was barred by the statute of limitations and that the city apparently was attempting to evade this defense by disguising the real cause of action by a complaint that alleged conspiracy and fraud. He accordingly concluded that there was no genuine issue for trial and granted defendants' motion for summary judgment.

■ In considering the issues presented, certain preliminary observations may be appropriate. It is well recognized that the statute of limitations can be asserted against the state and municipalities. State v. Bies, 258 Minn. 139, 103 N. W. (2d) 228. And, except in the case of fraud, ignorance of a cause of action will not prevent the running of the statute. Voegele v. Mahoney, 237 Minn. 43, 54 N. W. (2d) 15; Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633. Minn. St. 541.05 provides:

"Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:

\*　\*　\*　\*　\*

"(6)   For relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

It is conceded that this action was not commenced until more than 6 years after the acceptance of the work on the system. However, it is contended that the proof will establish that defendants' acts constituting the alleged fraud were not discovered within the 6 years immediately preceding the institution of this action.

The showing, with reference to the issue of fraud, must be considered in light of those authorities which hold that a party is liable for fraud if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to be false or asserting it as of his own knowledge without knowing whether it is true or false, with the intention to induce the person to whom it is made to act in reliance upon it, or under such circumstances that such person is justified in acting in reliance upon it and is thereby deceived and induced to act in reliance upon it to his damage. Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 149 N. W. (2d) 37; 8A Dunnell, Dig. (3 ed.) § 3818; Prosser, Torts (3 ed.) p.

700. On the basis of the showing made to the trial court, it appears that Suburban Engineering represented that the job had been completed according to specifications. It also appears from the record that there were defects in the job and work, resulting in cave-ins requiring expense to the city. It seems to us that the showing before the trial court presents conflicting facts with reference to the representations of defendants bearing upon the completion of the work and the reliance of the city on those representations. The fact that the city engineer may have made a cursory inspection, which did not disclose the defects, does not necessarily bar the suit. In Rother v. Hiniker, 208 Minn. 405, 407, 294 N. W. 644, 646, we said:

"Civil actions require proof of fraud by a fair preponderance of the evidence. Dowden v. Kanuch, 158 Minn. 75, 196 N. W. 819. If there is a misrepresentation but the purchaser, instead of relying upon it, makes an independent examination and acts upon the result thereof without regard to the misrepresentations, there is no cause of action. See Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, 170, Ann. Cas. 1915B, 775. But 'this court * * * has held that, if the buyer, instead of investigating as fully as he might, made only a partial investigation, and relied in part upon such investigation and in part upon the representations of the adverse party, and was deceived by such representations to his injury, he may maintain an action for such deceit.' Id. p. 454; Schmidt v. Thompson, 140 Minn. 180, 184, 167 N. W. 543. It is sufficient if the representation, although not the sole cause, constituted 'one of several inducements and had a material influence upon the plaintiff.' See Old Colony L. Ins. Co. v. Moeglein, 165 Minn. 117, 119, 205 N. W. 885, 886."

The principle was also stated in Goldfine v. Johnson, 208 Minn. 449, 452, 294 N. W. 459, 460:

"It is contended that defendant's meager inspection before the sale precludes a showing of his reliance. True, the general rule is that a purchaser cannot undertake an independent investigation, rely upon the information thereby obtained, and later successfully assert that he was misled. An independent investigation, without more, may suggest but

does not establish nonreliance. It is enough if the representations were a substantial and material inducement to the purchase. The question of reliance is ordinarily for the jury."

The above cases lead to the conclusion that the cursory inspection which Caswell may have conducted after completion of the work would not preclude plaintiff from proving the elements of fraud. Moreover, in Spiess v. Brandt, 230 Minn. 246, 253, 41 N. W. (2d) 561, 566, 27 A. L. R. (2d) 1, it was said:

"* * * In fact, it is the well-established rule that in a business transaction the recipient of a fraudulent misrepresentation of a material fact is justified in relying upon its truth, although he might have ascertained its falsity had he made an investigation."

Erickson v. Mathwig, 226 Minn. 55, 57, 31 N. W. (2d) 918, 919, is authority for the statement that a purchaser can rely on representations relating to a prospective purchase, "even though by making an actual inspection of the property * * *, or by consulting the official survey records * * *, the true condition of the premises would have been disclosed."

■ We have discussed in a number of cases the circumstances under which the trial court might properly use the blunt instrument of a summary judgment to end litigation. Couillard v. Charles T. Miller Hospital, Inc. 253 Minn. 418, 92 N. W. (2d) 96; Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593; Donnay v. Boulware, 275 Minn. 37, 144 N. W. (2d) 711. In the more recent case of Whisler v. Findeisen, 280 Minn. 454, 160 N. W. (2d) 153, we reversed the summary judgment, expressing the view that although on the state of the record it was not likely the defendant would prevail upon trial, that fact was not a sufficient basis for refusing him his day in court with respect to issues which were not shown to be sham, frivolous, or so insubstantial that it would obviously be futile to try them.

It seems to us that on the state of the record here there was a sufficient showing that representations that the job had been completed in accordance with specifications were false. Whether those representations would constitute actionable fraud within the purview of our authorities

and whether the city relied upon them are fact questions for the jury. We think the city is entitled to its day in court on these issues.

While the allegations charging conspiracy may well be of doubtful merit, it is unnecessary for us to consider them in view of the disposition we make of the case. We take it that this allegation bears upon the issue of whether or not defendants are collectively, as well as individually, liable for damages in the event the city succeeds in establishing its claim of fraud.

Reversed and remanded.