Ted HARRISON, Jr., a minor, by Audrey HARRISON, his guardian ad litem, Respondent,

v.

Amy HARRISON, et al., Appellants.

No. A05–1038.

Court of Appeals of Minnesota.

May 2, 2006.

Kay N. Hunt, Robert J. King, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for respondent.

William L. Davidson, Brian A. Wood, Sara J. Lathrop, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellants.

Considered and decided by
PETERSON, Presiding Judge;
KLAPHAKE, Judge; and HUDSON,
Judge.

## OPINION

PETERSON, Judge.

This appeal is from a summary judgment in an action brought by a minor child against his parents alleging negligent maintenance and installation of the child passenger restraint system that the child was riding in when he was injured in a motor-vehicle collision. Appellants argue that the district court erred in concluding that the exception from Minn.Stat. § 169.685, subd. 4(a) (2004), created by Minn.Stat. § 169.685, subd. 4(b), applies to the minor child's action against his parents. We affirm.

## FACTS

The parties stipulated to the following facts for purposes of their cross-motions for summary judgment.

Three-year-old respondent Ted Harrison, Jr. (Teddy) was a passenger in a motor vehicle driven by his mother, appellant Amy Harrison. Teddy was seated in the right rear seating position, directly behind the front passenger seat, and was secured in a child-safety seat, which is also known as a "child passenger restraint system." Another vehicle collided with the Harrison vehicle and caused the Harrison vehicle to leave the roadway and roll over several times. The collision caused Teddy to be released from his safety seat, ejected from the vehicle, and injured.

The safety seat that Teddy was in when the collision occurred was manufactured by Century Products Company and was purchased new for Teddy by his parents. The safety seat uses a two-slotted buckle mechanism that is situated in the seat bottom between the child's legs. The inbound slot had not been used for many months. On the day of the collision, Teddy's father, appellant Ted Harrison, Sr., had secured Teddy in the safety seat. Harrison customarily put Teddy into the safety seat, pulled the seat's harness with the attached tongue over Teddy's head, secured the tongue in the outbound buckle slot until he heard a click, and pulled upward on the harness to ensure that it was securely fastened. This is the procedure that he used just before the collision.

The Minnesota State Patrol investigated the collision and observed that the harness of the safety seat was unlatched at the scene of the collision. The safety seat was strapped into the Harrison vehicle with the vehicle's seat belt, but it was tipped over to the left, away from the right rear passenger-side window and door and nearly horizontal to the rear seat.

The state patrol experimented with the safety seat during the days following the collision and observed that the harness tongue could be pulled free of the outbound buckle slot even though the buckle mechanism had seemed to "click" into place when the tongue was inserted into the outbound buckle slot. The state patrol ultimately discovered that a coin in the inbound, unused slot of the buckle mechanism caused this false-latch phenomenon. The state patrol noted dirt and debris on the coin and concluded that the coin had been in the buckle mechanism for some time.

Ted Harrison was primarily responsible for maintaining Teddy's car safety seat. He cleaned out the seat approximately twice per week by removing the seat from the vehicle and wiping it or shaking it out. He knew from the seat's instruction manual that he needed to keep debris out of the buckle slots. He had last cleaned the seat just a few days before the collision.

Ted Harrison was also primarily responsible for installing the safety seat in the Harrison vehicle. He knew that the vehicle shoulder/lap-belt restraint harness had to be converted from the emergency locking mode to the automatic locking mode, which allowed the vehicle's seat belt to automatically lock into place as it was fed into the retractor and alleviated the need for a safety locking clip on the vehicle seat belt when it was used with a car safety seat. Harrison typically installed the safety seat by pulling the seat belt all the way out, threading it through the back of the safety seat, and latching it to the vehicle buckle mechanism. The seat belt would then click as it reentered the vehicle seat-belt retractor, indicating that the vehicle seat belt was locked into place. Harrison would lean his body weight onto the car seat to ensure that the vehicle seat belt retracted as far as possible. After the seat belt was locked, Harrison would make sure that everything was tight by attempting to move the child safety seat. He had installed the child passenger restraint system in the vehicle after cleaning it a few days before the accident.

A product-liability claim was asserted on Teddy's behalf against the Century Products Company, alleging defective design of the child passenger restraint system. The claim was settled. In a separate lawsuit, Teddy sued his parents, alleging negligent maintenance and installation of the child passenger restraint system. Both parties brought motions for summary judgment. For purposes of the cross-motions for summary judgment, the parties agreed that the Harrisons were negligent in the maintenance and installation of Teddy's car seat.

Appellants argued in the district court that they were entitled to summary judgment as a matter of law because Minn. Stat. § 169.685, subd. 4(a) (2004), prohibits the introduction of proof of the use or failure to use a child passenger restraint system in automobile litigation and, therefore, respondent's claim was barred. Respondent argued in the district court that he was entitled to summary judgment because the exception from Minn.Stat. § 169.685, subd. 4(a), found at Minn.Stat. § 169.685, subd. 4(b), controls under the stipulated facts. The district court concluded that the exception applies to respondent's action and granted respondent's motion for summary judgment and

denied appellants' motion for summary judgment. This appeal followed.

## ISSUE

Does the exception from Minn.Stat. § 169.685, subd. 4(a) (2004), created by Minn.Stat. § 169.685, subd. 4(b), apply to respondent's action against appellants?

## ANALYSIS

■ On appeal from a summary judgment, this court examines the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). Here, the parties have stipulated to the facts, and no genuine issues of material fact exist. The only issue before us is whether the district court erred in interpreting Minn.Stat. § 169.685, subd. 4 (2004), which states:

(a) Except as provided in paragraph (b), proof of the use or failure to use . . . a child passenger restraint system as described in subdivision 5,[1] or proof of the installation or failure of installation of . . . a child passenger restraint system as described in subdivision 5 shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

(b) Paragraph (a) does not affect the right of a person to bring an action for damages arising out of an incident that involves a defectively designed, manu-factured, installed, or operating . . . child passenger restraint system. Paragraph (a) does not prohibit the introduction of evidence pertaining to the use of a . . . child passenger restraint system in an action described in this paragraph.

■ Statutory construction is a question of law, which this court reviews de novo. *Ryan Contracting, Inc. v. JAG Inv., Inc.*, 634 N.W.2d 176, 181 (Minn.2001). When the district court grants summary judgment based on the application of a statute to undisputed facts, the result is a legal conclusion, reviewed de novo by the appellate court. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

■ Appellants argue that the exception from Minn.Stat. § 169.685, subd. 4(a), created by Minn.Stat. § 169.685, subd. 4(b), allows evidence of the installation or failure of installation of a child passenger restraint system to be admitted only in a product-liability case for defective design, manufacture, installation, or operation. Therefore, appellants contend, the district court erred in ruling that evidence of the installation or failure of installation of a child passenger restraint system is admissible in this action because respondent sued appellants under a negligent-installation theory, not a product-liability theory.

Under the canons of interpretation that apply when we construe statutes, "words and phrases are construed according to rules of grammar and according to their common and approved usage; but techni-

---

1. Minn.Stat. § 169.685, subd. 5 (2004), states:
   (a) Every motor vehicle operator, when transporting a child under the age of four on the streets and highways of this state in a motor vehicle equipped with factory-installed seat belts, shall equip and install for use in the motor vehicle, according to the manufacturer's instructions, a child passenger restraint system meeting federal motor vehicle safety standards.

   (b) No motor vehicle operator who is operating a motor vehicle on the streets and highways of this state may transport a child under the age of four in a seat of a motor vehicle equipped with a factory-installed seat belt, unless the child is properly fastened in the child passenger restraint system.

cal words and phrases and such others as have acquired a special meaning, ... are construed according to such special meaning." Minn.Stat. § 645.08(1) (2004).

Citing *City of Coon Rapids v. Suburban Eng'g, Inc.*, 283 Minn. 151, 153, 167 N.W.2d 493, 494 (1969), appellants argue that the phrase, "defective installation," denotes a product-liability context under Minnesota case law and that by its plain meaning, the phrase does not apply to a parent placing a car seat in the back seat of a motor vehicle and strapping a child into the car seat. In *City of Coon Rapids*, the complaint alleged that "the city sustained damages resulting from defective installation of a storm sewer." 283 Minn. at 153, 167 N.W.2d at 494. But *City of Coon Rapids* involved a fraud claim, not a product-liability claim, and, therefore, it does not demonstrate that either "defective installation" or "defectively installed" is a technical phrase or a phrase that has acquired a special meaning that denotes a product-liability context. *See id.* at 155–58, 167 N.W.2d at 495–97 (addressing fraud claim).

In common usage, "install" means, "[t]o connect or set in position and prepare for use," *The American Heritage Dictionary of the English Language* 907 (4th ed.2000) [hereinafter *American Heritage Dictionary* ], and "defective" means, "[h]aving a defect; faulty." *Id.* at 475. Applying these common meanings to interpret Minn. Stat. § 169.685, subd. 4(b), "a defectively installed child passenger restraint system" means a child passenger restraint system that has a defect or is faulty because of the way that it was connected or set in position and prepared for use.

Furthermore, Minn.Stat. § 169.685, subd. 4(b), states that the limitation in Minn.Stat. § 169.685, subd. 4(a), "does not affect the right of a person to bring *an action for damages arising out of an incident that involves a defectively* designed, manufactured, *installed*, or operating ... *child passenger restraint system.*" (Emphasis added.) The phrase, "an action for damages arising out of an incident that involves a defectively installed child passenger restraint system" does not describe only a product-liability action. It describes an action brought under any theory of liability that seeks recovery of damages that arose out of a certain type of incident. Whether the exception applies to a particular action depends on the nature of the incident from which damages arose, rather than on the theory of liability. If the incident involves a defectively installed child passenger restraint system, the exception applies.

In common usage, "incident" means "[a] definite and separate occurrence; an event." *American Heritage Dictionary* 886. Applying this meaning to Minn.Stat. § 169.685, subd. 4(b), the exception applies to an action for damages arising out of an occurrence or event that involves a child passenger restraint system that has a defect or is faulty because of the way that it was connected or set in position and prepared for use.

Because a motor-vehicle collision is obviously an occurrence or an event, and appellants stipulated that they were negligent in the maintenance and installation of the child safety restraint system in which respondent was riding when he was injured in a collision, respondent's action against appellants is an action for damages arising out of an occurrence or event that involved a child passenger restraint system that had a defect or was faulty because of the way that it was set in position and connected or adjusted for use.

Appellants argue that interpreting Minn. Stat. § 169.685, subd. 4(b), so that the exception it creates applies when a parent defectively installs a child passenger re-

straint system will make the limitation in Minn.Stat. § 169.685, subd. 4(a), inapplicable in any case involving the use of a child passenger restraint system because every child passenger restraint system is installed into a vehicle before it is used. But not all litigation that involves the use of a child passenger restraint system also involves a claim that the child passenger restraint system was defectively designed, manufactured, installed, or operated. Under the plain language of Minn.Stat. § 169.685, subd. 4(b), the exception applies, and Minn.Stat. § 169.685, subd. 4(a), does not prohibit the introduction of evidence pertaining to the use of a child passenger restraint system, only when an action is brought to recover damages that arose out of an incident that involved a defectively designed, manufactured, installed; or operating child passenger restraint system.

Appellants also argue that a statement made by the senate author of the legislation that created the exception codified at Minn.Stat. § 169.685, subd. 4(b),[2] demonstrates that the legislature intended the exception to apply only to product-liability actions. But "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2004). When the words of Minn.Stat. § 169.685, subd. 4(b), are construed according to their common and approved usage, the application of Minn.Stat. § 169.685, subd. 4(b), to respondent's action against appellants is clear and free from all ambiguity. Under the plain meaning of the statute, the exception applies to respondent's action, and we may not disregard the plain meaning of the statute. *See also MBNA Am. Bank, N.A. v. Comm'r of Revenue*, 694 N.W.2d 778, 780 (Minn.2005) (stating that absent ambi-

guity, court cannot avoid plain meaning of words of statute to give effect to spirit of law).

## DECISION

The district court correctly determined that the exception from Minn.Stat. § 169.685, subd. 4(a), created by Minn. Stat. § 169.685, subd. 4(b), does not apply only to a product-liability action. The district court correctly determined that the exception applies to respondent's action.

**Affirmed.**

2. 1999 Minn. Laws ch. 106, § 1, is codified at    Minn.Stat. § 169.685, subd. 4(b) (2004).