Ted HARRISON, Jr., a minor, by Au-
drey HARRISON, his guardian
ad litem, Respondent,

v.

Amy HARRISON, et al., Appellants.

No. A05–1038.

Supreme Court of Minnesota.

June 21, 2007.

Kay Nord Hunt, Robert J. King, Lommen, Abdo, Cole, King & Stageberg, PA, Minneapolis, MN, for Respondent.

William Lawrence Davidson, Brian A. Wood, Sara J. Lathrop, Lind, Jensen, Sullivan & Peterson, PA, Minneapolis, MN, for Appellants.

Cameron M. Parkhurt, Minneapolis, MN, for amicus The Minnesota Trial Lawyers Association.

Diane B. Bratvold, Steven P. Aggergaard, Rider, Bennett, LLP, Minneapolis, MN, for amicus Minnesota Defense Lawyers Association.

## OPINION

MEYER, Justice.

This case presents the question of whether Minnesota's "seat belt gag rule," Minn.Stat. § 169.685, subd. 4(a) (2006), permits an action to be brought against a child's parents for negligent installation and maintenance of a child passenger restraint system. The district court allowed the child's action to proceed, concluding that the child's action fell within an exception to the seat belt gag rule that permits evidence of seat belt or car seat use in "an action for damages arising out of an incident that involves a defectively designed, manufactured, installed, or operating seat belt or child passenger restraint system." Minn.Stat. § 169.685, subd. 4(b) (2006). The court of appeals affirmed. *Harrison ex rel. Harrison v. Harrison*, 713 N.W.2d 74, 75 (Minn.App.2006). We conclude that the child's action fell within the plain language of the exception to the seat belt gag rule and affirm the court of appeals.

Ted Harrison, Jr. (Ted), respondent, was three years old, and a passenger in a motor vehicle driven by his mother that was struck by another vehicle. As a result of the collision, Ted was thrown from his child passenger restraint system and injured. A products liability action, alleging defective design, was brought on Ted's behalf against the manufacturer of the restraint system. Ted settled with the manufacturer at the start of trial.

In a separate negligence action, Ted, by his guardian ad litem, sought recovery

from his parents, Amy and Ted Harrison (the Harrisons), alleging negligent installation and maintenance of his child passenger restraint system. The parties brought cross-motions for summary judgment and stipulated, for purposes of the motions, that the Harrisons were negligent in the maintenance of Ted's car seat for failing to discover and remove a coin from the car seat's buckle mechanism. The parties also stipulated that the Harrisons were negligent in failing both to convert the vehicle's seat belt restraint harness to the automatic locking mode and to check that the car seat's buckle was securely latched into the buckle mechanism. The district court granted summary judgment to Ted and denied summary judgment to the Harrisons, concluding that the exception to the gag rule for "defective installation" is not limited to products liability claims against designers, manufacturers, distributors, and retailers of child passenger restraint systems.

The court of appeals affirmed. *Harrison*, 713 N.W.2d at 75. The court rejected the Harrisons' argument that the exception to the seat belt gag rule was limited to products liability cases. *Id.* at 78. Instead, the court of appeals concluded that under the plain meaning of the statute, the exception applies to Ted's action:

> The phrase, "an action for damages arising out of an incident that involves a defectively installed child passenger restraint system" does not describe only a product-liability action. It describes an action brought under any theory of liability that seeks recovery of damages that arose out of a certain type of incident. Whether the exception applies to a particular action depends on the nature of the incident from which damages arose, rather than on the theory of liability. If the incident involves a defectively installed child passenger restraint system, the exception applies.

*Id.* Because the court of appeals held that the language of the statute was unambiguous, it declined to consider the statute's legislative history. *Id.* at 79.

The Harrisons make two arguments in this appeal. First, the exception the legislature crafted in section 169.685, subd. 4(b), allows evidence of use or installation of a car seat only in products liability cases. Second, the exception requires that all claims of defective child passenger restraint systems be brought in one action, and because Ted did not bring a single action for damages, his separate negligence action against the Harrisons falls outside the statutory exception. We address these arguments in turn.

▮▮▮▮ Statutory interpretation begins with an inquiry into whether the law is ambiguous; that is, whether it is subject to more than one plausible interpretation. *See Janssen v. Best Flanagan*, 662 N.W.2d 876, 884 (Minn.2003). When the language of a statute is unambiguous, our role is to give effect to the legislature's will as expressed in that language. *See id.* Only if we determine that the plain meaning of a statute is ambiguous will we consider the circumstances under which the law was enacted, the consequences of a particular interpretation, and the law's legislative history. Minn.Stat. 645.16 (2006). In addition, "[e]very law shall be construed, if possible, to give effect to all its provisions." *Id.* Application of a statute to undisputed facts is a legal conclusion that we review under a de novo standard. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

Minnesota Statutes § 169.685, subd. 4, reads in relevant part:

> (a) Except as provided in paragraph (b), proof of the use or failure to use seat belts or a child passenger restraint system as described in subdivision 5, or

proof of the installation or failure of installation of seat belts or a child passenger restraint system as described in subdivision 5 shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

(b) Paragraph (a) does not affect the right of a person to bring an action for damages arising out of an incident that involves a defectively designed, manufactured, installed, or operating seat belt or child passenger restraint system. Paragraph (a) does not prohibit the introduction of evidence pertaining to the use of a seat belt or child passenger restraint system in an action described in this paragraph.

In this personal injury action, Ted seeks damages that resulted from the operation of a motor vehicle and the use or installation of a child passenger restraint system. The evidence Ted seeks to admit—negligent use or installation of a car seat—falls squarely within the plain meaning of subdivision 4(a). Thus, unless the exception described in subdivision 4(b) applies, the evidence is not admissible and the action may not be brought.

## I.

We turn first to the Harrisons' argument that subdivision 4(b) applies only to products liability actions. The Harrisons argue that use of the word "defectively" in subdivision 4(b) should be understood to have a technical, rather than common, meaning because the term "defective" is closely connected to products liability actions. *See Bilotta v. Kelley Co.*, 346 N.W.2d 616, 623 n. 3 (Minn.1984) (requiring proof of a product's defective condition in a products liability case utilizing the theory of strict liability). The Harrisons assert that, as a result, use of the word "defectively" indicates that the legislature intended Minn.Stat. § 169.685, subd. 4(b), to apply only to products liability cases and not to cases that are based in negligence and brought against noncommercial defendants.[1]

■ In ascertaining the meaning of a statute, words and phrases should be construed according to the rules of grammar and according to their common meanings, but technical words and phrases should be construed according to their special meanings or definitions. Minn.Stat. 645.08(1) (2006). The word "defective" is closely connected to products liability actions;[2] as such, a products liability action requires a

---

**1.** "[A] commercial seller who sells a product in a defective condition unreasonably dangerous to the user is liable for physical harm to the user caused by the defective condition, even though the seller was not negligent and even though he was not in privity with the user." *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 156 (Minn.1982); *see also* Restatement (Third) of Torts: Products Liability § 1 cmt. c (1998) (stating that products liability actions may only be brought against "manufacturers and other commercial sellers and distributors who are engaged in the business of selling or otherwise distributing the type of product that harmed the plaintiff").

**2.** The Harrisons appear to rely on the *association* of the term "defectively" with products

liability actions rather than the word's *meaning* in the products liability context. A manufacturing defect in the products liability context means "the product departs from its intended design." Restatement (Third) of Torts: Products Liability § 2(a) (1998). This is a meaning substantially similar to the common meaning of "defect." *See Harrison,* 713 N.W.2d at 78 (quoting *The American Heritage Dictionary of the English Language* 475 (4th ed.2000)) (indicating "defective" means "faulty"). Moreover, the negligent installation of the car seat by the Harrisons arguably meets the products liability definition (provided the definition is modified to apply to defective installation).

plaintiff to prove the defendant's product was in a defective condition. Restatement (Third) of Torts: Products Liability § 1 (1998); *cf. Bilotta,* 346 N.W.2d at 623 n. 3. Therefore, the word "defectively" in Minn.Stat. § 169.685, subd. 4(b), may indicate that the exception only applies to products liability claims. That the exception specifically applies to two products—seat belts and child passenger restraint systems—supports this interpretation.

■ However, subdivision 4(b) does not explicitly limit its application to products liability actions. Subdivision 4(b) simply says "an action." An "action" means "*any* proceeding in any court of this state." Minn.Stat. § 645.45(2) (2006) (emphasis added). In addition, the word "defective" has meanings outside of the products liability context. For example, "defect" connotes different things in the context of a nonconforming tender of performance under a contract, *see Johannsen v. Minn. Valley Ford Tractor Co.,* 304 N.W.2d 654, 657 (Minn.1981) (discussing opportunity to cure the "defect"), and in the context of criminal liability of the mentally ill, *see* Minn.Stat. § 611.026 (2006) (discussing "defect of reason"). Moreover, in general usage, "defective" simply means "faulty." *The American Heritage Dictionary of the English Language* 475 (4th ed.2000). We reject the Harrisons' limited, technical interpretation and conclude that the common, ordinary meaning of the term "defective installation" contemplates any action arising out of the negligent installation of a child passenger restraint system.

■ In addition, the word "install" is used in subdivision 5, which provides, with certain exceptions, that "[e]very motor vehicle operator, when transporting a child under the age of four * * * shall equip and install for use in the motor vehicle * * * a child passenger restraint system." [3] Minn.Stat. § 169.685, subd. 5(a) (2006). Accordingly, the legislature recognized that an ordinary consumer—not just a manufacturer—may "install" a child car seat. Also, Minn.Stat. § 169.685, subds. 5(a) and 5(b), both employ the term "*factory*-installed," indicating that, when the legislature intended to reference a seat belt installation performed at the factory, it did so explicitly. (Emphasis added.) For all of these reasons, we conclude that Minn. Stat. § 169.685, subd. 4(b), is clear and unambiguous and by its plain language permits a child to bring an action against his parents for negligent *installation* of a child passenger restraint system.

---

**3.** In its entirety, Minn.Stat. § 169.685, subd. 5, reads:

(a) Every motor vehicle operator, when transporting a child under the age of four on the streets and highways of this state in a motor vehicle equipped with factory-installed seat belts, shall equip and install for use in the motor vehicle, according to the manufacturer's instructions, a child passenger restraint system meeting federal motor vehicle safety standards.

(b) No motor vehicle operator who is operating a motor vehicle on the streets and highways of this state may transport a child under the age of four in a seat of a motor vehicle equipped with a factory-installed seat belt, unless the child is properly fastened in the child passenger restraint system. Any motor vehicle operator who violates this subdivision is guilty of a petty misdemeanor and may be sentenced to pay a fine of not more than $50. The fine may be waived or the amount reduced if the motor vehicle operator produces evidence that within 14 days after the date of the violation a child passenger restraint system meeting federal motor vehicle safety standards was purchased or obtained for the exclusive use of the operator.

(c) The fines collected for violations of this subdivision must be deposited in the state treasury and credited to a special account to be known as the Minnesota child passenger restraint and education account.

## II.

■ We turn next to the Harrisons' claim that the subdivision 4(b) exception requires that all claims of defective child passenger restrain systems be brought in one action, and because Ted did not bring all of his claims in a single action, his separate negligence action is precluded. The exception states that the gag rule does not affect a claimant's right "to bring an action for damages," and that evidence pertaining to the use of a child passenger restraint system in that action may be introduced. Minn.Stat. § 169.685, subd. 4(b). The Harrisons assert that the words "an action" connote one action, thereby limiting the exception to any one action brought by Ted. They argue, in effect, that "joinder" of all possible claims is required before a claimant can invoke the exception. In particular, the Harrisons argue that if subdivision 4(b) is applicable to Ted's action against them, it applied only in the first action against the manufacturer of the car seat and, because Ted's action against the Harrisons was not brought with that earlier lawsuit, Ted's current lawsuit is improper.

It is true that the legislature, in other contexts, has mandated that all claims or parties are to be joined in one action. For example, Minn.Stat. § 555.11 (2006), dealing with declaratory judgments, specifically states that "all persons shall be made parties who have or claim any interest which would be affected by the declaration." Similarly, in actions for determination of a child's parentage, Minn.Stat. § 257.60 (2006) specifically lists circumstances under which the child must be made a party to the action.

■ However, joinder is not required under the common law and a plaintiff "may proceed in one action or in separate actions." *Kisch v. Skow,* 305 Minn. 328, 331, 233 N.W.2d 732, 734 (1975). If the legislature intended to modify the common law rule on joinder, it would have used language that clearly expressed its intent to do so. *See Schermer v. State Farm Fire & Cas. Co.,* 721 N.W.2d 307, 324 (Minn. 2006) (stating that the court presumes that statutes do not alter the common law unless they expressly so provide). We do not believe the legislature intended to modify such a well-recognized common law rule in such an offhand manner. *See Gonzales v. Oregon,* 546 U.S. 243, 267, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (noting that it should not be assumed that the legislature intends to " 'hide elephants in mouse-holes' ") (quoting *Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001)). We conclude that by its plain language, Minn.Stat. § 169.685, subd. 4(b), does not create a joinder requirement and its application is not limited to only one action. Rather, the statute may be applied to any action.

The Harrisons express the concern that the result we reach in this case will allow the exception to swallow the rule. We agree with the court of appeals that "not all litigation that involves the use of a child passenger restraint system also involves a claim that the child passenger restraint system was defectively designed, manufactured, installed, or operated." *Harrison,* 713 N.W.2d at 79. Moreover, the gag rule would still prohibit the defensive introduction of such evidence by defendant drivers seeking to establish comparative negligence.

We hold that the plain language of Minn.Stat. § 169.685, subd. 4(b), permits an action to be made against a child's parents for negligent installation and maintenance of a child passenger restraint system and evidence pertaining to the use of the child passenger restraint system in such an action is not prohibited.

Affirmed.

ANDERSON, Paul H., Justice (dissenting).

I respectfully dissent.

The task of interpreting legislative enactments is one of the most common, yet most difficult, tasks performed by our court. To aid us in this task, we have, from the time Minnesota became a state, been developing and applying principles and rules of statutory interpretation. These principles and rules are now well established. When I apply them to the statute respondent Ted Harrison, Jr. seeks to use as the basis for his cause of action against his parents, I conclude that the district court erred when it did not grant summary judgment in favor of the parents.

As a court, our primary goal in interpreting a statute is to give effect to the intent of the legislature. Minn.Stat. § 645.16 (2006). While we generally assume that words should be given their common meaning, technical words and phrases must be construed in accordance with their special meanings or definitions. Minn.Stat. § 645.08(1) (2006). In addition, a word's meaning depends on how it is used, so we examine the words of a statute in context rather than isolated from their setting. *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co.*, 517 N.W.2d 888, 892 (Minn.1994); *Chiodo v. Bd. of Educ. of Special Sch. Dist. No. 1*, 298 Minn. 380, 382, 215 N.W.2d 806, 808 (1974).

Minnesota Statutes § 169.685, subd. 4 (2006)—the statute we must interpret in the case before us today—reads in relevant part:

(a) Except as provided in paragraph (b), proof of the use or failure to use seat belts or a child passenger restraint system as described in subdivision 5, or proof of the installation or failure of installation of seat belts or a child passenger restraint system as described in subdivision 5 shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

(b) Paragraph (a) does not affect the right of a person to bring an action for damages arising out of an incident that involves a defectively designed, manufactured, *installed*, or operating seat belt or child passenger restraint system. Paragraph (a) does not prohibit the introduction of evidence pertaining to the use of a seat belt or child passenger restraint system in an action described in this paragraph.

(Emphasis added.) Applying our rules of statutory interpretation, I construe the key word in subdivision 4(b)—the word *installed*—to apply much more narrowly than does the majority.

Products-liability actions require proof of a product's defective condition; thus, the basis for a products-liability action brought under section 169.685 is inseparable from the term "defectively," as that term is used in subdivision 4(b). Restatement (Third) of Torts: Products Liability § 1 (1998) ("One engaged in the business of selling or otherwise distributing products who sells or distributes a *defective* product is subject to liability for harm to person or property caused by the *defect*." (Emphasis added.)); *cf. Bilotta v. Kelley Co.*, 346 N.W.2d 616, 623 n. 3 (Minn.1984). Subdivision 4(b) specifically applies to two products—seat belts and child passenger restraint systems—further linking that subdivision to products-liability actions. Moreover, defective design and defective manufacture are two specific varieties of products-liability claims. *See* Restatement (Third) of Torts: Products Liability § 2 (1998).

I conclude that by placing the phrase "defectively installed" together with the

more specific phrases "defectively designed" and "defectively manufactured," the legislature directs us to invoke *ejusdem generis,* a canon of statutory interpretation that holds that the meaning of general words may be restricted by association with more particular words. *See State v. Moore,* 699 N.W.2d 733, 738 (Minn.2005). Accordingly, I conclude that when read in context, the word "installed" in Minn.Stat. § 169.685, subd. 4(b), should not be read to include the installation of a car seat or a seat belt into a car by an end-use consumer—in this case Ted Harrison, Jr.'s parents. Instead, I conclude that subdivision 4(b) applies only to products-liability actions and covers only a more limited class of potential commercial defendants. Therefore, because Ted Harrison, Jr.'s car seat was installed by his parents and not a commercial manufacturer or distributor, I conclude that subdivision 4(b) does not apply to this action against his parents. Accordingly, I would hold that Ted Harrison, Jr.'s action against his parents, Amy and Ted Harrison, Sr., is barred by subdivision 4(a), and the district court erred when it did not grant summary judgment in favor of the parents.