EDUCATION MINNESOTA–OSSEO, et al., Appellants

v.

INDEPENDENT SCHOOL DISTRICT 279, OSSEO AREA SCHOOLS, Maple Grove, Minnesota, et al., Respondents.

No. A06–1989.

Court of Appeals of Minnesota.

Dec. 4, 2007.

Harley M. Ogata, Debra M. Corhouse, St. Paul, for appellants.

Stephen M. Knutson, Michelle D. Kenney, Knutson, Flynn & Deans, P.A., Mendota Heights, for respondents.

Considered and decided by LANSING, Presiding Judge; DIETZEN, Judge; and HUSPENI, Judge.*

## OPINION

LANSING, Judge.

Following a court trial, the district court found that the Osseo Area Schools Independent School District 279 did not commit an unfair labor practice under the Public Employment Labor Relations Act when it refused to meet and negotiate about a unilateral change in the selection of vendors for retirement plans that qualify under section 403(b) of the Internal Revenue Code. Because the plain language of Minn.Stat. § 179A.03, subd. 19 (2006), does not provide mandatory negotiation for vendor selection, we affirm.

## FACTS

In 2005 the Osseo Area Schools Independent School District 279 unilaterally replaced its twenty-four approved vendors for 403(b) retirement plans with a single vendor. The school district stated that the change was made to improve accountability, to improve plan quality, to seek competitive products, and to enable employees to make sound financial decisions. Education Minnesota–Osseo, which represents the district's teachers and educational paraprofessionals, demanded to meet and negotiate with the school district about the number and selection of the vendors. The school district refused.

Education Minnesota–Osseo then filed a suit claiming that the school district committed an unfair labor practice under the state's Public Employment Labor Relations Act and requested an injunction requiring the school district to meet and negotiate about 403(b) plan vendor selection.

The case proceeded to a court trial. Following the trial, the district court concluded that 403(b) plans are for retirement and that retirement contributions and benefits are not mandatory subjects of negotiation under the Public Employment Labor Relations Act. Accordingly, the district court found no unfair labor practice and denied the request for injunctive relief. Education Minnesota–Osseo now appeals.

## ISSUE

Is the selection of 403(b) plan vendors subject to mandatory negotiation under the Public Employment Labor Relations Act?

## ANALYSIS

Education Minnesota–Osseo argues that 403(b) plan vendor selection is subject to mandatory negotiation because it is within the definition of "terms and conditions of employment." Under the Public Employment Labor Relations Act (PELRA), the "terms and conditions of employment" are the subject of mandatory negotiation between covered employers and employees. Minn.Stat. § 179A.07, subd. 2(a) (2006). An employer's refusal to meet and negotiate over the terms and conditions of employment constitutes an unfair labor practice. Minn.Stat. § 179A.13, subd. 2(5) (2006); *Foley Educ. Ass'n v. Indep. Sch.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

*Dist. No. 51*, 353 N.W.2d 917, 920 (Minn. 1984).

The definition of "terms and conditions of employment" includes the hours of employment, compensation, and fringe benefits. Minn.Stat. § 179A.03, subd. 19 (2006). But the definition specifically excludes "retirement contributions or benefits" not related to health-insurance coverage. *Id.* The application of this provision involves a question of statutory interpretation, which we review de novo. *Olmanson v. LeSueur County*, 693 N.W.2d 876, 879 (Minn.2005).

The legislature intended that the scope of mandatory bargaining under PELRA should be "broadly construed so that the purpose of resolving labor disputes through negotiation could best be served." *Int'l Bhd. of Teamsters v. City of Minneapolis*, 302 Minn. 410, 415, 225 N.W.2d 254, 257 (1975). But the first step in construing a statute is to determine whether the statute's language is ambiguous. *Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 539 (Minn.2007). If the plain meaning of the statute is unambiguous, we must apply the plain meaning. *Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 453 (Minn.2007). We will engage in statutory construction only if the plain meaning of the statute is ambiguous. *Id.*

Education Minnesota–Osseo argues that 403(b) plan vendor selection is a fringe benefit. Their argument is well grounded. *See W. St. Paul Fed'n of Teachers v. Indep. Sch. Dist. No. 197*, 713 N.W.2d 366, 375 (Minn.App.2006) (reasoning that both amount of health coverage *and* choice of providers constitute "fringe benefits"). But our conclusion that vendor selection is a fringe benefit is the beginning—not the end—of the analysis. Because the statute that provides for mandatory negotiations over the terms and conditions of employment expressly excludes certain fringe benefits, the specific issue we must address is whether 403(b) plan vendor selection falls under the exception for "retirement contributions or benefits." *See* Minn.Stat. § 179A.03, subd. 19 (excluding "retirement contributions or benefits" not related to health insurance from definition of "terms and conditions of employment").

We conclude that the exception for "retirement contributions or benefits" unambiguously includes the selection of vendors for the provision of 403(b) plans. There is no question that the primary—if not exclusive—purpose of a 403(b) plan is to save for retirement. Under certain circumstances, the funds can be accessed before retirement. I.R.C. § 403(b)(11) (2000). But an employer provides 403(b) plans for the purpose of helping employees save for retirement. Because the plain meaning of the statute is unambiguous, we are obligated to give effect to the legislature's will as it is expressed in that language. *Harrison*, 733 N.W.2d at 453.

Therefore, based on the plain meaning of "retirement contributions or benefits," the selection of 403(b) plan vendors is excluded by the definition of terms and conditions of employment and is not a subject of mandatory negotiation. Accordingly, the school district did not engage in an unfair labor practice under PELRA.

Because the plain meaning controls, we do not engage in a statutory interpretation that would examine the circumstances of enactment, the consequences of a particular interpretation, or the law's legislative history. *Id.* Thus, we do not address Education Minnesota–Osseo's arguments that would apply only if the statute were ambiguous. We note, however, that vendor selection remains a *permissive* but not *mandatory* subject of negotiation under PELRA. *See* Minn.Stat. § 356.24, subd. 1(5) (2006) (permitting 403(b) plans to be

included in collective-bargaining agreements); *Minn. Arrowhead Dist. Council 96 of AFSCME v. St. Louis County,* 290 N.W.2d 608, 611 (Minn.1980) (permitting bargaining about nonmandatory subjects).

Although we affirm, we recognize that Education Minnesota–Osseo may have a compelling argument to make to the legislature for a change in the statute. The express exclusion of "retirement contributions or benefits" removes all pension issues from the scope of mandatory subjects for collective bargaining under PELRA. *AFSCME Council 6 v. Sundquist,* 338 N.W.2d 560, 576 (Minn.1983). In *Sundquist,* the supreme court adopted three policy justifications for the exception:

> (1) [T]o permit employers to contain the rising cost of pension benefits; (2) to permit the legislature to participate in the making of significant government policy; and (3) to promote uniformity and to prevent the existence of disparate benefits between different funds based upon the skill and success of employees' bargaining representative.

*Id.* These policy justifications may have less application in the context of 403(b) plans.

Traditional pension plans are "defined-benefit plans." *See* 29 U.S.C. § 1002(35) (2000) (defining "defined-benefit plan" for purposes of the federal Employee Retirement Income Security Program). Under a defined-benefit plan, the employee is entitled to a specific benefit at retirement. As a result, the employer or the pension plan takes on a long-term obligation and must guard against investment losses. *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 440, 119 S.Ct. 755, 761, 142 L.Ed.2d 881 (1999). A 403(b) plan, in contrast, is generally a "defined-contribution plan," and the employee is not entitled to a specific benefit at retirement. *See* 29 U.S.C. § 1002(34) (2000) (defining "defined-contribution plan").

Unlike traditional pension plans, the employer does not bear the risk of loss when employees save for retirement with 403(b) plans. The employee typically invests his or her own money and has a strong interest in selecting 403(b) plan vendors. The employer, in contrast, has little interest in 403(b) plan selection other than limiting administrative costs. But the legislature's plain language does not require negotiation on this subject. We are required to enforce this statutory language. As a result, Education Minnesota–Osseo's arguments are best addressed to the legislature and not to this court.

Finally, we note that the school district has raised a variety of nondispositive procedural arguments in favor of affirmance. Because the school district prevails on the merits, we do not address its subsidiary procedural arguments.

### DECISION

Based on the plain meaning of "retirement contributions or benefits," the school district did not commit an unfair labor practice when it refused to meet and negotiate over the selection of a single vendor to provide 403(b) plans. Accordingly, the district court's judgment is affirmed.

**Affirmed.**