**STATE of Minnesota, Appellant,**

v.

**Dale Allen MOEN, Respondent.**

**No. A07–2365.**

Court of Appeals of Minnesota.

July 8, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and Brian J. Melton, Clay County Attorney, Pamela L. Harris, Assistant County Attorney, Moorhead, MN, for Appellant.

Lindsey D. Haugen, Larivee & Light, Fargo, MN, for Respondent.

Considered and decided by ROSS, Presiding Judge; CONNOLLY, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

The State of Minnesota challenges the district court's dismissal of the felony domestic-violence charge against respondent. We reverse and remand.

## FACTS

Respondent Dale Allen Moen was arrested on September 8, 2007, after he hit the 16–year–old child of his live-in girlfriend on the head with his closed fist. The child resided with Moen and the child's mother. Moen admitted to police that he struck the child, explaining that he did so because he thought the child was lying to him. Moen was charged with felony domestic assault and gross-misdemeanor child endangerment. The felony enhancement was based on Moen's convictions in March 1998 in North Dakota of felony assault against a peace officer and misdemeanor assault against a different victim.

Moen moved for dismissal of the felony charge, contending that "the [s]tate has failed to allege [Moen] committed the [offense] within ten years of the first of any combination of *two or more previous qualified domestic violence-related offense convictions.*" Moen argued that his North Dakota convictions did not constitute qualified domestic violence-related offenses because "[i]t is unclear whether either of [Moen's] convictions ... arose out of a situation involving domestic violence." In

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the alternative, Moen argued that his North Dakota conviction of assaulting a peace officer was dissimilar to fourth-degree assault under Minnesota law.

The state argued that (1) the plain statutory meaning of "[q]ualified domestic violence-related offense" includes any offense enumerated in Minn.Stat. § 609.02, subd. 16 (2006); (2) legislative history supports broadening the offense of felony-level domestic assault; and (3) the relevant North Dakota statutes are similar to Minnesota statutes enumerated as "[q]ualified domestic violence-related offense[s]."

The district court dismissed the charge for lack of probable cause, reasoning:

> For those other offenses [lacking an explicit domestic-violence component], that nexus with domestic violence is key; it is not enough that a conviction under a given statute is listed [in the definition of a qualified domestic-violence related offense], the conviction must also arise out of an incident involving domestic violence. Before an offense can be considered a *qualified* domestic-violence related offense, it must be a domestic-violence related offense.

Further, the district court found that "[a]n interpretation of [the definition of a '[q]ualified domestic-violence related offense'] that would characterize, for example, a fifth degree assault conviction as a 'qualified domestic-violence related offense' conviction even if it did not involve domestic violence, would be an absurd result." The district court did not address whether the North Dakota and Minnesota statutes are similar. This appeal followed.

## ISSUES

I. Does Minn.Stat. § 609.02, subd. 16 (2006), require an enumerated offense to have a nexus to domestic violence to constitute a "[q]ualified domestic violence-related offense?"

II. Are respondent's North Dakota convictions similar to enumerated Minnesota offenses?

## ANALYSIS

### I.

■ As an initial matter, we must address whether the dismissal of the felony charge has a critical impact on the prosecution of this case. *See State v. Scott,* 584 N.W.2d 412, 416 (Minn.1998) (stating critical impact must be established before this court determines whether the district court's pretrial determination was erroneous). The standard for critical impact is that the dismissal "significantly reduces the likelihood of a successful prosecution." *State v. Kim,* 398 N.W.2d 544, 551 (Minn. 1987). Here, although the state can still prosecute Moen under the gross-misdemeanor child-endangerment charge, we conclude that the dismissal of the felony domestic-violence charge had a critical impact on this case. *See State v. Kiminski,* 474 N.W.2d 385, 389 (Minn.App.1991) (holding that the possibility of an alternative prosecution did not preclude the state's ability to appeal the dismissed charge it would prefer to prosecute), *review denied* (Minn. Oct. 11, 1991).

■ The state argues that the district court erred in determining that the statutory definition of a "[q]ualified domestic violence-related offense" requires a domestic-violence nexus. We agree.

■ Statutory-construction questions are reviewed de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). We begin by examining the statutory language; a statute is applied according to its plain meaning unless its meaning is ambiguous. *Harrison ex rel. Harrison v. Harrison,* 733 N.W.2d 451, 453 (Minn.2007); *see also* Minn.Stat. § 645.16 (2006) ("When the

words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). Ambiguity exists if the statute "is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). If a statute is ambiguous, then its interpretation is guided by the legislature's intent. Minn.Stat. § 645.16. In ascertaining legislative intent, it may be presumed that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable" and that the legislature intended all statutory provisions to have meaning. Minn. Stat. § 645.17 (2006). Finally, penal statutes are construed strictly; any reasonable doubt regarding legislative intent is resolved in favor of the accused. *State v. Colvin,* 645 N.W.2d 449, 452 (Minn.2002). However, the rule of strict construction does not compel the narrowest possible construction of the statute. *State v. Zacher,* 504 N.W.2d 468, 473 (Minn.1993).

A person who commits domestic assault against a family or household member in violation of Minn.Stat. § 609.2242 (2006) or who commits assault in the fifth degree in violation of Minn.Stat. § 609.224, subd. 1 (2006), "within ten years of the first of any combination of two or more previous qualified domestic violence-related offense convictions ... is guilty of a felony." Minn. Stat. § 609.2242, subd. 4. " 'Qualified domestic violence-related offense' includes a violation of or an attempt to violate sections ... 609.2231 (fourth-degree assault); 609.224 (fifth-degree assault) ... and similar laws of other states...." Minn.Stat. § 609.02, subd. 16 (Supp.2007).

Because Moen intentionally inflicted bodily harm on a household member,[1] his assault of his girlfriend's child constituted domestic assault in violation of Minn.Stat. § 609.2242, subd. 1.

We conclude that Minn.Stat. § 609.02, subd. 16, is not ambiguous. By its plain text, violation of any enumerated offense including Minn.Stat. §§ 609.2231 and .224 constitutes a "[q]ualified domestic violence-related offense." *Id.* The district court's conclusion that a domestic-violence "nexus" is required is not supported by the statutory language.[2] Moreover, requiring a nexus would render portions of the statutory language superfluous. The legislature chose to list domestic assault *and* the five degrees of assault as separate qualifying offenses. Minn.Stat. § 609.02, subd. 16. Requiring a domestic-violence nexus would absorb the other five assault offenses into the domestic-assault offense. *See* Minn.Stat. § 645.17 (stating the presumption that the legislature intends all statutory provisions to have meaning). Contrary to the district court's finding, the result that we reach is not absurd. Arguably, any behavior indicating an individual's propensity for violence is related to domestic violence. And because the statute is unambiguous, the rule of construction that compels resolving any doubts in favor of Moen is not applicable. *Colvin,* 645 N.W.2d at 452. And this court cannot add further limitations on the term "[q]ualified domestic violence-related offense" that the legislature has not chosen to impose. *See generally State v. Koperski,* 611 N.W.2d 569, 573 (Minn.App.2000).

We conclude that the district court's construction of Minn.Stat. § 609.02, subd.

---

**1.** "Family or household member" includes "persons who are presently residing together." Minn.Stat. § 518B.01, subd. 2(b)(4) (2006).

**2.** In contrast, misdemeanor and gross-misdemeanor domestic assault expressly require that the offense be committed against "a family or household member." Minn.Stat. § 609.2242, subds. 1, 2 (2006).

16, was erroneous because it was contrary to the plain meaning of an unambiguous statute.

## II.

Next, we must determine whether Moen's North Dakota convictions are similar to qualified Minnesota offenses.

Again, the list of Minnesota crimes that constitute "[q]ualified domestic violence-related offense[s]" specifies that "similar laws of other states" are included in its definition. Minn.Stat. § 609 .02, subd. 16 (2006). Nontechnical words "are construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08 (2006). "Similar" is defined as "[r]elated in appearance or nature; alike though not identical." *The American Heritage College Dictionary* 1292 (4th ed.2007).

Moen was convicted in North Dakota of a "class C felony" for assaulting a peace officer and of a "class B misdemeanor" for assault:

1. A person is guilty of an offense if that person:

 a. Willfully causes bodily injury to another human being; or

 b. Negligently causes bodily injury to another human being by means of a firearm, destructive device, or other weapon, the use of which against a human being is likely to cause death or serious bodily injury.

2. The offense [of assault] is a class B misdemeanor except when the victim is a peace officer ... acting in an official capacity, which the actor knows to be a

fact, ... in which case the offense is a class C felony.

N.D. Cent.Code § 12.1–17–01 (1995).

■ The state argues that Moen's conviction of assaulting a peace officer in North Dakota is similar to Minnesota's offense of assaulting a peace officer. We agree.

Minnesota law provides that:

Whoever physically assaults a peace officer licensed under section 626.845, subdivision 1, when that officer is effecting a lawful arrest or executing any other duty imposed by law is guilty of a gross misdemeanor [fourth-degree assault] and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both. If the assault inflicts demonstrable bodily harm ... the person is guilty of a felony.

Minn.Stat. § 609.2231, subd. 1 (2006).

These laws are similar because they both involve assaulting a peace officer. Although Moen argues that the laws are dissimilar because "[u]nder the North Dakota statute, a defendant *must* have willfully caused bodily injury to a peace officer," the statute requires only bodily injury caused by willfulness *or* negligence. (Emphasis added.) N.D. Cent. Code § 12.1–17–01. And although Moen argues that bodily injury is not required in Minnesota for the fourth-degree-assault charge, when bodily injury results the offense is enhanced to a felony. Minnesota's felony assault is the relevant offense to compare to Moen's North Dakota felony assault.[3] Minn.Stat.

---

**3.** We note that after stating that Minn.Stat. § 609.2231 is a qualifying offense the legislature added "fourth-degree assault" in parentheses. Minn.Stat. § 609.02, subd. 16. But it appears that the parentheticals merely list the heading of the statutory section, and it was not intended to exclude any enhancements

contained within. Moreover, it would be an absurd result if a *more* serious violation of an enumerated statutory section would not qualify. *See* Minn.Stat. § 645.17 (stating that we may presume the legislature did not intend an absurd result).

§ 609.2231, subd. 1. Moen's argument that the statutes are dissimilar because of Minnesota's licensure requirement also lacks merit. In Minnesota, individuals "who have satisfactorily completed certified basic training programs, and passed examinations as required by the board" may be licensed as peace officers. Minn. Stat. § 626.845, subd. 1(d) (2006). And similarly, in North Dakota " 'peace officer' means a public servant authorized by law or by a government agency or branch to enforce the law and to conduct or engage in investigations or prosecutions for violations of law." N.D. Cent. Code § 12.1–01–04(17) (1995). The fact that the Minnesota assault statute explicitly refers to the licensure requirement is not such a distinction as to render the laws of the respective states dissimilar.

 The state argues that Moen's other North Dakota conviction of misdemeanor assault is similar to Minnesota's offense of fifth-degree assault.[4] We agree.

Minnesota law provides that: "Whoever does any of the following commits an assault and is guilty of a misdemeanor: (1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon another." Minn.Stat. § 609.224, subd. 1 (2006).

This offense is similar to Moen's North Dakota assault conviction because both offenses address intentionally inflicting bodily harm on another. Although Minnesota's statute appears to be broader because it encompasses an "attempt [ ] to inflict bodily harm," *id.*, North Dakota law pro-

vides that "[c]riminal attempt is an offense of the same class as the offense attempted." N.D. Cent.Code § 12.1–06–01(3) (1995).

We conclude that Moen's March 1998 convictions under N.D. Cent.Code § 12.1–17–01 constitute two "[q]ualified domestic violence-related offense[s]" because the offenses are similar to two Minnesota offenses enumerated in Minn.Stat. § 609.02, subd. 16.

## DECISION

The plain language of the text of Minn. Stat. § 609.02, subd. 16 (2006), does not require a domestic-violence nexus for an offense enumerated in the subdivision to constitute a "[q]ualified domestic violence-related offense." Because Moen was convicted of two offenses similar to offenses listed therein within ten years before the current offense, the district court erred in dismissing the felony domestic-violence charge for lack of probable cause.

**Reversed and remanded.**

---

4. Before the district court, Moen did not argue that the simple-assault statutes were dissimilar. Generally, this court does not consider matters not raised before the district court. *Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996). And respondent failed to brief this issue. *See State v. Butcher,* 563 N.W.2d 776, 780 (Minn.App.1997) (holding that issues

not briefed on appeal are waived), *review denied* (Aug. 5, 1997). But because the issue was implied in the district court and has constitutional implications, we conclude that justice requires addressing it here. Minn. R. Civ.App. P. 103.04 (stating that this court has discretion to consider any issue on appeal).